## HADDEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 236.

Circuit Court of Appeals, Second Circuit.

May 11, 1931.

Lyle T. Alverson, of New York City (Wayne Johnson, of New York City, of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Andrew D. Sharpe, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and William E. Davis, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The United Thacker Coal Company began business in January, 1904. From that time until April 30, 1917, its expenses exceeded its income by $833,862.92, and from March 1, 1913, to April 30, 1917, the excess was $329,549.22. It had no profits from its organization until March 1, 1913. The net earnings or profits from April 30, 1917, to December 20, 1917, were $405,949.07, which resulted from the sale of capital assets. The amount of the gain, basing it upon the value of March 1, 1913, from the sale of its capital assets in September, 1917, stated separately from their income and disbursements of the period, was $735,300.

Petitioner's testator, Luther Kountze, on December 22, 1917, owned 11,145.155 shares of the capital stock of the United Thacker Coal Company, and at the time there was outstanding 40,008 shares. Thus he had 27.857 per cent. of the stock. On December 22, 1917, the United Thacker Coal Company made a distribution of $75 per share, resulting in Kountze's receiving $835,886.63. In fixing the taxable income for 1917, the Commissioner determined that Kountze's taxable income out of this distribution was $295,145.-99, this representing a distribution of profits accrued and accumulated since March 1, 1913. Petitioner's contention is that there were no earnings or profits accumulated on March 1, 1913; that there was a loss from March 1, 1913, to April 30, 1917, amounting to $329,-549.22, which represented carrying charges. But from April 30, 1917, to December 20, 1917, as a result of the sale of the real estate, there was a profit of $735,300, from which should be deducted a loss of $329,350.91,

leaving a net profit before taxes of $405,-949.09. From this petitioner contends there should be deducted the federal taxes thereon calculated to be $54,550.28, leaving a balance of $351,398.81. From this should be subtracted the losses sustained, petitioner says, prior to April 30, 1917, of $329,549.22 leaving an amount available, on December 22, 1917, for distribution as profits accrued and accumulated since March 1, 1913, of $21,-849.59. Kountze's share of this as profit would be $6,086.64. The Commissioner having fixed the profit at $295,145.99, the petitioner contends the income has been overstated by $289,059.35.

The first question presented is whether profits which accrued since March 1, 1913, shall be determined by measuring the difference between the value, at that date, of the property sold and the amount received therefor. The Board based its decision upon the failure to show by the record the number of shares outstanding at distribution. But this is now conceded by the Commissioner to have been established at 40,008 shares outstanding.

Section 31 (a) of the Revenue Act of 1916, as added by Revenue Act of 1917, § 1211 (40 Stat. 337), provides that distributions received by corporate stockholders in 1917 out of "earnings or profits accrued since March first, nineteen hundred and thirteen" shall be considered income to the amount of the earnings or profits so distributed. The profit on 40,000 acres of land, which were sold in September, 1917, but purchased prior to March 1, 1913, should be determined by ascertaining its value on March 1, 1913, and deducting that from the net sales price received. This is in conformity with the Commissioner's regulation (article 1543, Regulation 65), and is in conformity with section 31 of the Revenue Act of 1916 (as added by Revenue Act 1917, § 1211). It must be given effective consideration. Maryland Casualty Co. v. United States, 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297. In Southern Pacific Co. v. Lowe, 247 U. S. 330, at page 335, 38 S. Ct. 540, 542, 62 L. Ed. 1142, the court said: "We are bound to consider accumulations that accrued to a corporation prior to January 1, 1913, as being capital, not income, for the purposes of the act. And we perceive no adequate ground for a distinction, in this regard, between an accumulation of surplus earnings, and the increment due to an appreciation in value of the assets of the taxpayer."

The profit of the sale of the lands in September based on the value of March 1, 1913, was $735,300. There were other expenses in the 1917 period amounting to $329,350.91, so that the net for the period was $405,949.-09. The principal outlay of the coal company which held the real estate was for interest and taxes or carrying charges. The excess of all expenses over their income during this taxable period was the sum of $329,-350.91. When it sold two-thirds of its land in 1917 at a profit, in order to ascertain its profit, it was proper to deduct these expenses. Willcuts v. Milton Dairy Co., 275 U. S. 215, 48 S. Ct. 71, 72, 72 L. Ed. 247.

The taxable year may not be divided between periods so as to state separately and segregate the profitable times from the unprofitable times. Sweets Co. of America v. Commissioner, 40 F.(2d) 436 (C. C. A. 2). The coal company had no profits before April 30, 1917, and the profits accumulated in December, 1917, were no more than the net income of the period between April 30, 1917, and December 20, 1917, $405,949.09. The operating loss sustained by the company between March 1, 1913, and April 30, 1917, amounting to $329,549.22, should be subtracted from the earnings or profits for the period when profits were received in order to determine the profits which accrued and accumulated since March 1, 1913. In Willcuts v. Milton Dairy Co., supra, the court said: "We do not think Congress intended that a corporation whose capital was impaired should be entitled to treat profits that, though earned, were insufficient to make good the impairment and create a surplus, as 'undivided profits.'"

Congress did not intend that a corporation should be held to accumulate profits for one tax purpose only and not for another. No earned surplus can be accumulated until the deficit or impairment of paid-in capital has been made good. Dividends paid while there is an operating deficit should be deemed to be from capital or paid-in surplus even though there are earnings of the taxable year sufficient to pay the dividend in whole or in part. Operating losses sustained after March 1, 1913, must be deducted from profits realized after that date before they can be a taxable profit on the sale of the land, and the accumulated profits since March 1, 1913, must necessarily mean the net excess of all profits between March 1, 1913, and the date of distribution, less all losses sustained between the same dates, and, in fixing the profit, the valuation of March 1, 1913, is to be deducted from the net sales price.

The appellant contends that it may deduct the income or profits taxes of the United Thacker Coal Company for the period from April 30, 1917, to December 20, 1917, amounting to $54,550.28, when determining the amount of the accrued and accumulated profits of that period available for distribution. The coal company maintained its books and accounts and made its tax returns on the basis of cash receipts and disbursements. The question presented is as to what was the amount of earnings or profits accrued and accumulated since March 1, 1913. The argument is that the statutory words "accrued profits" necessarily require the deduction of all accrued charges, particularly including the taxes on the profits in question, and it is argued that so much of the earnings or profits as were necessary to satisfy the federal tax accrued not to the corporation, but to the United States, and such amount therefore was not part of the net earnings or profits available for distribution to stockholders as dividends.

Section 31 of the Revenue Act of 1916 (as added by Revenue Act 1917, § 1211) defines, in subdivision (a), a taxable dividend as a distribution made by a corporation out of earnings and profits accrued since March 1, 1913; subdivision (b) sets up a presumption that distributions are made out of earnings or profits accumulated since March 1, 1913, but expressly provides that any earnings or profits accumulated prior to March 1, 1913, may be distributed to stockholders exempt from tax, after earnings and profits accumulated since that date have been distributed.

The Commissioner's position is that earnings or profits available for distribution to stockholders are to be determined without deducting federal income taxes of the corporation, and that such taxes are not to be taken out as an expense for the taxing year. Regulation 45 provides in article 1542 that "in ascertaining whether or not a distribution was made out of earnings or profits of the taxable year there should first be set aside a proper reserve for the payment of accrued income and war profits and excess profits taxes." The Board of Tax Appeals In Appeal of L. S. Ayers & Co., 1 B. T. A. 1135, pointed out the distinction between the right of deduction of income tax and the deduction in ascertaining invested capital as referred to in the cases. See Commissioner v. Pittsburgh Knife & Forge Co., 30 F.(2d) 522 (C. C. A. 3), and Blair v. Ragley Lumber Co., 30 F.(2d) 683 (C. C. A. 5). It treated invested capital of corporations as a statutory concept, and, in construing the statutory definition, held that earnings of the current year available for dividends should not be decreased on account of an estimated tax later to accrue, on the ground that to do so would be to take into account in the computation of invested capital an element of expense or outgo of that current year while forbidden by the statute to offset that element by the income of the year. But in a proceeding such as this, there is no concern with the statutory concept of invested capital. What must be determined is the amount of earnings and profits of the coal company which was available for distribution to stockholders on the date of distribution. Since the earnings to each of these dates is unknown, the Commissioner is compelled to ascertain the earnings for the entire year and prorate them. This would logically follow from the reasoning of United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. In applying section 31 of the Revenue Act of 1916 (as added by Revenue Act 1917, § 1211), the court is concerned with ascertaining the amount of real earnings and profits which are available for distribution to stockholders on the date of each distribution.

There appears to be no sound reason why the current earnings or profits should not first be reduced by the amount of the tentative tax in determining the amount of the current or post March 1, 1913, earnings available for distribution of dividend. Commissioner of Int. Rev. v. James (C. C. A. 2) 49 F.(2d) 707, decided May 4, 1931.

The taxpayer was executor of his brother's estate, and on June 20, 1907, was made an allowance as executor's commissions. He did not collect all of this at the time, but in 1917 received $12,500 on account of the commission awarded him in 1907. The Board held that this sum was subject to an income tax in 1917. The fact that the taxpayer withheld sufficient sums to assure payment of his commission does not change the character of the sum due to him. The estate might have acquired additional assets, but it appears that there was sufficient in the estate to have paid the commission prior to 1917. There was in the estate on March 1, 1913, an undistributed estate of $61,503.52 including assets of respective values of $23,691.80 and $24,200, which were subject to the widow's life estate. The value of the estate not so subject was $13,611.72. In addition, the executor held subject to the same life

estate 1,000 shares of the Colorado National Bank of Denver, and 1,000 shares of stock of the First National Bank of Omaha. It is not shown how old the widow was, and therefore a computation may not be made of this reversionary interest. The estate left by the taxpayer's brother amounted to $2,963,920.-07. We are not in accord with the Board in saying that at any time there was an insufficient sum in the estate to pay this commission. The failure to collect prior to March 1, 1913, did not convert it into income so that, when it was received in 1917, the tax was improperly imposed on this item.

Rule 50 of the Board of Tax Appeals sets forth the procedure when the Board determines the issues in any proceeding and withholds final decision of the deficiency or over payment for later computation. It provides: "Any hearing under this rule will be confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the report already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such report or of any new issues. This rule is not to be regarded as affording an opportunity for rehearing or reconsideration."

The Board's amended opinion was rendered November 6, 1929, and, on December 19, 1929, respondent filed a recomputation of liability. It showed a combined deficiency in income and excess profits taxes of $71,-890.77, all uncollectable because of the bar of the statute of limitations. The recomputation which the taxpayer filed January 17, 1930, shows an uncollectable deficiency in income tax of $107,475.01 and an overpayment of excess profits taxes of $31,816.18. A second computation was filed by the Commissioner January 22, 1930, and shows a combined deficiency in income and excess profits taxes of $75,658.69, all uncollectable because of the bar of the statute of limitations. The Board entered its final order January 31, 1930, holding "that for the year 1917 there is no deficiency and there is no overpayment of tax." The difference between these opposed computations is that the Commissioner calculated total income taxes and excess profits tax according to the Board's findings and credited them against the total amount of both taxes paid by the taxpayer, leaving an uncollected deficiency of one sum. The petitioner recomputed the income tax and excess profits tax separately and credited against them the respective amounts paid on

each account. The result of such computation is the overpayment in excess profits taxes which respondent in effect credited against uncollectable income tax. The petitioner claims that the overpayment of excess profits tax should be refunded. It seems to be agreed by both petitioner and respondent that no excess profits taxes were due and none were shown in either computation of the tax. But, since there must be a recalculation as to the taxes in accordance with this decision, the case will be remitted to the Board, where a calculation of the normal tax due will be considered, and at that time due allowance can be made for the excess profits tax admittedly erroneously paid. Sections 607, 609 of the Revenue Act of 1928 (45 Stat. 791, 26 USCA §§ 2607, 2609); section 284 (a), Revenue Act of 1926 (44 Stat. 9, 26 USCA § 1065 (a).

Order reversed.