## THORSEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6838.

Circuit Court of Appeals, Ninth Circuit.

May 19, 1933.

Edwin H. Cassels and Barry Gilbert, both of Chicago, Ill., and Adolphus E. Graupner, of San Francisco, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and W. R. Lansford, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

Review is sought of a decision of the Board of Tax Appeals, affirming, except with respect to a concededly erroneous computation, a determination by the Commissioner of Internal Revenue of the deficiency in petitioner's 1923 income taxes. Petitioner asserts that there was no deficiency.

The sole question is how much of the dividend received by petitioner as a stockholder in the West Side Lumber Company on April 14, 1923, was a "distribution * * * out of * * * earnings or profits accumulated since February 28, 1913, * * * " and therefore taxable; and how much a distribution out of "earnings or profits accumulated * * * prior to March 1, 1913," and therefore exempt. The case is governed by the Revenue Act of 1921; the applicable provisions are set out in the margin.[1]

Petitioner's case before the Board was consolidated with that of Canfield, another stockholder in the lumber company, as to whom the same issue was presented. In so far as the decision affected Canfield, it was reversed in Canfield v. Commissioner, 62 F. (2d) 751 (C. C. A. 7, 1933). For the detailed facts with respect to the corporate financial situation, stipulated there as here, we refer to the statement in that case, pages 751, 752 of 62 F. (2d). We restate them briefly (giving round instead of exact figures).

On March 1, 1913, the company had a surplus of $4,400,000. Profits for the year ending February 28, 1914, were $4,600. In each of the years ending February 28, 1915 and 1916, losses were suffered, together amounting to $400,000. Each year thereafter up to and including that in which the dividend in controversy was declared, the company made profits totaling in all $2,450,000.

[1] "(a) * * * The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders or members, * * * out of its earnings or profits accumulated since February 28, 1913. * * *

"(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. * * * " 42 Stat. 227, 228, § 201.

Dividends amounting to $1,290,000 were declared between March 1, 1917, and February 12, 1923. The dividend of April 14, 1923, was in the sum of $5,100,000, of which petitioner, who held 3,270 out of 15,000 shares, received $1,111,800.

The corporation has the right, under the statute, petitioner contends, to maintain the capital and earned, as well as paid in surplus that it had on February 28, 1913, and, if they be impaired by subsequent losses, to restore them out of later profits, thereby leaving only the *net* profits, if any, of the period after February 28, 1913, as the "earnings or profits accumulated since February 28, 1913."

Respondent, on the other hand, contends that if the corporation instead of maintaining or distributing the earned surplus of February 28, 1913, prefers to risk its impairment by using it in the business, there is no statutory provision for applying subsequent profits to restoring that surplus to its original amount, if, meantime, losses shall have been incurred. If profits are earned after February 28, 1913, subsequent losses, concededly, would be chargeable against them, so far as they go; in this case, to the extent of $4,-600 earned in the year ending February 28, 1914. The losses, however, in excess of such profits, incurred before further profits are earned, are necessarily, respondent urges, paid out of and chargeable against the February 28, 1913, earned surplus, and are not held in suspense, to be paid out of later possible profits. If then profits are earned after that surplus shall have been so reduced, the *entire* amount thereof is asserted to be the "earnings or profits accumulated since February 28, 1913," and dividend distributions therefrom to be taxable.

14.91 per cent. or 22.75 per cent. of the April, 1923, dividends would be taxable as coming from these post February 28, 1913, accumulations, dependent upon which of these contentions is sound.

The Board of Tax Appeals, in Walker v. Commissioner, 27 B. T. A. ——, stated to have been formulated before but announced after the Canfield decision in the 7th C. C. A., and later in Garrett v. Commissioner, —— B. T. A. —— (March 10, 1933), adopted the views expressed by the 7th C. C. A. in the Canfield Case.

■ These decisions, and petitioner's contention, are based, in part, on the view that the Supreme Court has developed a general doctrine that accumulations prior to March 1, 1913, are to be treated as capital for all in-come tax purposes.[2] Clearly for *some* income tax purposes such accumulations are so treated. See Lynch v. Turrish; Southern Pacific Co. v. Lowe, both supra, note 2. But, on the day the Turrish and Southern Pacific Cases were decided, the Supreme Court in Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149 (1918), recognized that for other purposes they need not be so treated. As the court said, in the Hornby Case: "Of course we are dealing here with the ordinary stockholder receiving dividends declared in the ordinary way of business. Lynch v. Turrish and Southern Pacific Co. v. Lowe, * * * rest upon their special facts and are plainly distinguishable." Page 346 of 247 U. S., 38 S. Ct. 543, 546, 62 L. Ed. 1149.

Further discussion of the Turrish and Southern Pacific Cases, and the later cases, which add little if anything to the picture, will serve no useful purpose. It suffices to say that they establish no such doctrine as that for which petitioner contends.

Solution of the present question is not to be found in a formula thought to be developed in decisions addressed to entirely different situations. It must be sought in the specifically applicable statutory provisions. The 1913 act was held constitutional in providing for the tax on dividends paid out of surplus accumulated prior to March 1, 1913. Lynch v. Hornby, supra. The 1916 Revenue Act exempted such distribution; the court said in Lynch v. Hornby: " * * * as a concession to the equity of stockholders * * * in view of constitutional questions that had been raised in this case, in the companion case of Lynch v. Turrish, and perhaps in other cases." Page 346 of 247 U. S., 38 S. Ct. 543, 546, 62 L. Ed. 1149.

The later revenue acts have consistently preserved the exemption, even though, constitutionally, such dividends could be taxed.

■ We are here concerned with the extent of the exemption conferred by the act of 1921. This act does not expressly convert the February 28, 1913, surplus into capital. It declares only that distributions out of accumu-

---

[2] Cited as establishing this doctrine are: Old Colony R. R. v. Commissioner, 284 U. S. 552, 52 S. Ct. 211, 76 L. Ed. 484 (1932); Lucas v. Alexander, 279 U. S. 573, 49 S. Ct. 426, 73 L. Ed. 851, 61 A. L. R. 906 (1929); Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570 (1920); Gulf Oil Corp. v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 132 (1918); Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087 (1918); Southern Pacific Co. v. Lowe, 247 U. S. 330, 38 S. Ct. 540, 62 L. Ed. 1142 (1918); Meischke-Smith v. Wardell, 286 F. 785 (C. C. A. 9, 1923); United States v. Guinzburg, 278 F. 363 (C. C. A. 2, 1921); Park v. Gilligan, 293 F. 129 (D. C. Ohio, 1921).

lations since February 28, 1913, are taxable, that distributions out of accumulations prior thereto are exempted (see applicable provisions set out in margin, supra). In these provisions, there is no attempt to define capital for the purposes of the act. The statute specifies only that certain accumulations may be and certain others may not be distributed tax free. And the question is: What are included within these terms? We turn, therefore, to the phrase which describes the exemption: " *  *  * any earnings or profits accumulated  *  *  * prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed."

Fairly construed, this is a privilege granted to a corporation to distribute by way of dividends, tax free as to its stockholders, any surplus that it may have on February 28, 1913. If, however, instead of distributing the surplus, the corporation, as in this case, subjects it to the hazards of the business, there is no provision for restoring, out of future normally taxable earnings, any part of the surplus that may thereby have been lost.

Petitioner emphasizes the clause defining taxable dividends instead of the exemption clause. He contends that the taxable "earnings or profits accumulated since February 28, 1913," must be deemed to mean net earnings or profits, that is, only the excess of profits earned over losses incurred after that date, and that therefore any distribution over and above such net profits must be deemed to be paid out of the tax exempt surplus of February 28, 1913. The argument ignores both bookkeeping and reality. The factual situation is that a part of the February 28, 1913, surplus was lost in the business in the following years. The distribution, of course, was not from losses but from the later earnings. Because Congress made distributions from the old surplus tax free, it cannot fairly be deemed to have intended that that surplus may be restored after it shall have been impaired by losses, and, in our judgment, the statutory language, fairly construed, admits of no such interpretation. Any such intent could have been readily expressed by exempting "an amount equal to the February 28, 1913, surplus," or by taxing "the net profits earned after February 28, 1913."

The Treasury Department officials have consistently interpreted this and similar provisions in accordance with the views herein expressed.[3] While these interpretations do not have the force of Treasury Regulations, it may reasonably be assumed, as respondent urges, that if opposed to the legislative intent, they would have been changed in the 1924, 1926, 1928, or 1932 acts. Cf. Murphy Oil Co. v. Burnet, 287 U. S. 299, 302, 303, 53 S. Ct. 161, 77 L. Ed. 318 (1932), and cases cited; Mass. Mutual Life Ins. Co. v. United States, 288 U. S. 269, 273, 53 S. Ct. 337, 77 L. Ed. 739 (1933). Shorb v. Commissioner, 22 B. T. A. 644, 645, does not indicate, as petitioner contends, that the Treasury Department has been inconsistent. In that case the actual capital was impaired; there was no surplus on February 28, 1913. We express no opinion on such a case.

The decision in Blair v. United States, 63 Ct. Cl. 193 (1927), certiorari denied, 275 U. S. 546, 48 S. Ct. 84, 72 L. Ed. 418 (1927), appears to support the conclusion that we have reached. In Hadden v. Commissioner, 49 F.(2d) 709 (C. C. A. 2, 1931), there was stated to be a deficit, not a surplus, on March 1, 1913. Certain expressions in the court's opinion, though literally contrary to the views herein expressed, must be deemed limited to the factual situation as there stated. If, as petitioner urges, a search of the record in other proceedings before the Board of Tax Appeals shows that there was in fact a surplus in the Hadden Case, we may say with Judge Learned Hand [The San Simeon, 63 F.(2d) 798, 802 (C. C. A. 2, 1933)] that "  *  *  * the practice of searching records and extracting as a part of the decision what the court did not mean to hold, may be useful as an academic exercise, but it is otherwise idle."

In Leland v. Commissioner, 50 F.(2d) 523 (C. C. A. 1, 1931), the surplus was paid in, not earned; the court assumed that such a paid in surplus, if diminished by losses, could be restored out of later profits, in holding that the losses of 1921, the year of incorporation, would be deductible from the profits of the succeeding years, in determining the taxability of a subsequent dividend distribution. There was, of course, on January 1, 1921, no earned surplus from which these losses could have been deducted. Unlike an earned surplus, a paid in surplus is, for these purposes, properly treated like capital.

The chronological order of profit and loss, as a basis for determining taxability, involves no absurdity, as argued by petitioner; it is not infrequently determinative in matters of taxation, as well as in other vital business affairs. An earned surplus on hand at the beginning of the year is subjected to the haz-

---

[3] A. R. M. 82, 3 Cumulative Bulletin 36 (1920) ; G. C. M. 3532, VII-1, Cumulative Bulletin 190 (1928).

ards of the business. If, despite the risk, losses are averted, that surplus has remained intact and is distributable as a tax-free dividend after the profits, if any, shall have been paid out as taxable dividends. If, however, losses have been incurred, that surplus has been reduced to the extent thereof; it is no longer intact and available for such tax-free distribution.

The well-settled practice in income tax matters is a sufficient answer to petitioner's challenge of the yearly instead of a quarterly or monthly basis for the determination of profit and loss. Cf. Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383 (1931).

Affirmed.