STANLEY V. WALDHEIM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HELEN W. BIENENSTOK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HELEN W. BIENENSTOK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

STANLEY V. WALDHEIM AND ELEANOR R. WALDHEIM, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31181, 36183, 36184, 34551.   Filed January 23, 1956.

*Eric Wm. Passmore, Esq.,* and *Maurice Weinstein, Esq.,* for the petitioners.

*Paul Levin, Esq.,* for the respondent.

840

844

OPINION.

TURNER, *Judge:* One issue which Stanley and Helen have in common is whether the cash distributions made pro rata by Waldheim & Company to its stockholders in 1945 and 1946 were dividends within the meaning of the statute. According to section 115 (a) of the Internal Revenue Code of 1939 a dividend "means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913 or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made." And in section 115 (b) it is provided that for the purposes therein "every distribution is made out of earnings or profits to the extent thereof."

The facts show that at December 31, 1944, Waldheim & Company had a deficit of $21,577.26 and though it did have substantial net earnings in 1945, it would still have had a deficit at December 31, 1945, even if no distributions to stockholders had been made. On such facts it is the claim of the petitioners that no part of the distributions could have been dividends. The claim is not well taken. Waldheim & Company did have net earnings for 1945 substantially in excess of the cash distributions made pro rata to its stockholders in that year, and under clause (2) of section 115 (a) quoted above, those distributions were dividends. *William G. Maguire,* 21 T. C. 853. The cases [4] cited and relied on by petitioners either relate to years prior to the enactment of clause (2) above or are otherwise distinguishable.

We are not advised as to the earnings of Waldheim & Company for 1946, but if we understand the parties aright they are agreed that the conclusion just stated likewise disposes of the question relating to the pro rata cash distributions made by Waldheim & Company in 1946, subject only to the adjustments which may result from our conclusions on the questions presented and decided in *Waldheim & Co.,* 25 T. C. 594.

A second question to be decided in the proceeding of Helen Bienenstok at Docket No. 36183 is whether in 1945 she realized a gain of

---

[4] *Willcuts* v. *Milton Dairy Co.,* 275 U. S. 215; *Foley Securities Corporation* v. *Commissioner,* 106 F. 2d 731; *Hadden* v. *Commissioner,* 49 F. 2d 709; *Estate of Harold M. Lehman,* 4 T. C. 325; *Roy J. Kinnear,* 36 B. T. A. 153; and *Edna C. Gutman,* 45 B. T. A. 836.

$9,445 on the cancellation of indebtedness owing by her to Waldheim & Company.

The respondent's argument is that section 115 (g) [5] is applicable and that under that section the stock was canceled or redeemed in such manner as to make the cancellation or redemption essentially equivalent to the distribution of a dividend. A primary difficulty with that contention is that the respondent made no such determination and no such issue has been raised by the pleadings. Accordingly, the question posed by respondent's argument is not properly before us for decision. In any event, however, the respondent does not support his contention convincingly. Helen acquired the shares in question by inheritance from her father and claims that her basis therefor was $100 per share since that was their fair market value at the date of her father's death. Respondent not only has voiced no opposition to this claim but has stipulated with petitioners that the stock "was appraised at $100 a share in the estate of Victor Waldheim," Helen's father, and on the basis thereof we have concluded and found that Helen's basis for the said shares was $100 per share. Furthermore, we have also found as a fact that the stock had a fair market value of at least $100 per share when the 155 shares were surrendered in satisfaction of the indebtedness, and not only is it our view that the evidence justifies and supports that finding but such finding was requested by the respondent on brief. Such being the case and taking into account the full import of the settlement agreement under which the shares were surrendered, we fail to note any support for the claim that there was any cancellation of indebtedness or that Helen's stock was redeemed in such manner as to make the redemption "essentially equivalent to the distribution of a taxable dividend."

It was respondent's determination that gain was realized by Helen on the cancellation of her indebtedness to Waldheim & Company and whether she did so realize gain is the question at issue. The facts show no cancellation of indebtedness but a satisfaction thereof at full value by the surrender of stock at $100 per share which was also its basis to Helen and which at the time of such surrender had a fair market value equal at least to $100 per share. The respondent was accordingly in error in determining that taxable gain resulted from the transaction.

As to Stanley, it is the claim of the respondent that in 1945 he received a distribution from Waldheim & Company greatly in excess of

[5] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(g) REDEMPTION OF STOCK.—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend.

the earnings of the said company for such year and to the extent of the earnings for that year the distribution is taxable as a dividend. under section 115. He bases this claim (1) on the proposition that the redemption of the 155 shares of Waldheim & Company stock, pursuant to the settlement agreement of November 13, 1945, resulted in the receipt by Stanley of a taxable dividend under section 115 (g), and (2) on the proposition that the acquisition by Stanley of the 666⅔ shares of Waldheim & Company stock at a price or prices substantially below the fair market value of the stock acquired effected a distribution of the 1945 earnings of the company and was the payment of a dividend under section 115 (a) (2).

That Stanley was enriched substantially by the settlement is not on the facts an open question. Passing for the moment the surrender of the 155 shares of stock in cancellation of his indebtedness to the company and its relation to other steps in the settlement, the facts show that for $20,500 he acquired 666⅔ shares of stock having a fair market value of at least $66,666.67. It is Stanley's claim, however, that 333⅓ of the said shares rightfully belonged to him at all times subject only to the payment by him of the amounts expended by the company in "taking over" and carrying the indebtedness for which the shares had been put up as collateral. Assuming for the purposes here that his position as to the 333⅓ shares formerly held by him is well taken, the facts still show that in being permitted to purchase the shares formerly owned by Jack Waldheim for $7,500 he was enriched by at least $25,833.33, the net effect of which was a distribution to him in that amount by Waldheim & Company. *Elizabeth Susan Strake Trust*, 1 T. C. 1131, is directly in point and we accordingly conclude and hold that to the extent of the 1945 earnings of the company not otherwise distributed the said distribution was a dividend within the meaning of section 115 (a) (2) and taxable to Stanley as such. It thus becomes unnecessary to pass upon the other claims and contentions of the parties relating to the dividend issue.

With respect to the year 1945 Stanley has pleaded the statute of limitations and the parties are in apparent agreement that the statute has run unless section 275 (c) is controlling. Section 275 (c) applies where a taxpayer in reporting his income omits from gross income an amount properly includible therein which is in excess of 25 per centum of the gross income stated in his return. It follows from our decision on the dividend issue above that Stanley did omit from the gross income reported on his 1945 return an amount properly includible therein which is in excess of 25 per centum of the amount of gross income which he did report. His claim that the respondent is barred from assessing the 1945 deficiency herein is accordingly denied.

For each of the years 1945 and 1946 Stanley deducted $360 as the cost to him of operating his personally owned automobile in the course

of his employment by Waldheim & Company. These deductions have been disallowed by the respondent. As is true of petitioners in so many cases coming before this Court, we think that Stanley did to some extent use his personally owned automobile in the course of his employment, but as is also true in most such cases, the amounts claimed as cost of such operation were not the amounts actually expended, but estimates thereof. Here the amounts claimed were not only estimated amounts but were estimated portions of estimated amounts. One apparent difficulty with the estimates is that they are identical for the two years even though the record shows that early in 1945 Stanley was discharged from his employment by Waldheim & Company, and his difficulties with the company and the other stockholders and directors were not resolved until November 13, 1945. If he resumed his employment prior to the settlement date that fact is not shown on record. It is thus apparent that whatever the amounts actually expended by Stanley in the two years in operating his automobile in the course of his employment there appears to be no justification for concluding that the amount expended in 1945 was as great as that expended in 1946. Applying the rule in *Cohan* v. *Commissioner*, 39 F. 2d 540, we have concluded on the evidence and found as a fact that Stanley's cost of operating his car in connection with his employment by Waldheim & Company was $30 in 1945 and $100 in 1946. To such extent the claimed deductions are allowed.

For legal services rendered in his behalf in connection with the above-described lawsuits and the settlement thereof Stanley incurred attorneys' fees in excess of $12,500, which fees were paid in installments over a number of years. During 1948 he paid one such installment in the amount of $900. On his return for 1948 the amount so paid was claimed as a deductible expense and he claims as error the respondent's disallowance thereof. Taking into account the subject matter of the said lawsuits and of the settlement agreement, it is our opinion that the claim of error is well taken and that the amount in question is deductible in full, partly under section 23 (a) (1) and partly under section 23 (a) (2). We so hold.

In the proceeding at Docket No. 36184 Helen W. Bienenstok alleged error on the part of the respondent in the disallowance of a deduction claimed as medical expenses. No proof was offered with respect thereto and no argument appears on brief. Possibly this is a case where the disallowance followed as a matter of course from adjustments in gross income made by the respondent in his determination of deficiency. If so, the parties presumably will make such recomputations as will be necessary with respect to the claimed deductions in their computations under Rule 50. If not, the issue will be regarded as abandoned.

*Decisions will be entered under Rule 50.*