*Decision will be entered under Rule 50.*

D. C. CLARKE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28257.   Promulgated February 24, 1931.

*Elwood Hamilton, Esq.*, for the petitioner.
*Arthur Carnduff, Esq.*, for the respondent.

320

OPINION.

TRAMMELL: The petitioner contends that he is entitled to a deduction in 1921 of $1,000 representing the amount he paid M. Bert Thurman for accompanying him to Washington. In his petition he alleged that the amount was paid Thurman for his services rendered in connection with the procurement of the contract for the sale of Camp Taylor and the sale of the camp. With respect to Thurman's employment and services, the petitioner under questioning of his counsel, testified as follows:

Q. Mr. Clarke what connection, if any, did Mr. M. Bert Thurman have with the sale of Camp Taylor?

A. I think it would be safe to say that he did not have any. Mr. Thurman went to Washington one time. He lived in New Albany, at the time we sold an estate, for the DePauls, and was familiar with our operation, and he went to Washington to introduce me and tell what he knew about our business. We never got any further than the hotel. We never interviewed a soul, and came back home, and I gave that check to him for his services.

\*         \*         \*         \*         \*         \*         \*

Q. Did you pay Mr. Thurman or employ him before or after the contract was entered into for the sale of Camp Taylor?

A. Afterwards—I do not remember the date.

Q. What was he to do; what was the purpose of his employment?

A. It must have been before. As I remember he was to introduce me to the authorities there and tell them about my service.

\*         \*         \*         \*         \*         \*         \*

Q. Mr. Clarke, did you ever pay \* \* \* Mr. Thurman or anybody else any money to procure the contract for you for the sale of Camp Taylor?

A. I did not.

We think the foregoing testimony of the petitioner clearly is in direct conflict with the allegation in the petition that the amount was in payment of services rendered by Thurman in procuring the contract to sell Camp Taylor or in the sale of the camp. The testimony merely shows that Thurman was to introduce the petitioner to some one of Washington and to tell what he knew of petitioner's business, but it fails to connect Thurman with the transaction connected with Camp Taylor. If the petitioner had any other business in Washington at that time the testimony does not indicate its nature and does not connect Thurman with it. The introduction of the petitioner to some one in Washington or a statement of the petitioner's business does not necessarily constitute a business transaction. Since

the record does not show that the expenditure was for any purpose connected with the petitioner's business, we do not think the respondent erred in refusing to allow the amount as a deduction.

The petitioner contends that he is entitled to a deduction for 1921 of $20,000 on account of a payment of that amount to E. V. Knight. The petition contains the following allegations:

The petitioner employed E. V. Knight of New Albany, Indiana, to assist him in the procurement and financing of the contract and sale of the property [Camp Taylor]. During the tax year 1921, the property was sold and the commissions paid to the petitioner were reported in gross income. The petitioner paid to E. V. Knight the above mentioned $20,000.

The petitioner submitted in evidence the check dated August 20, 1921, payable to the Second National Bank, New Albany, Indiana, which is as set out in our findings of fact, and testified that it was for the payment of Knight's part of the profits under the written contract of April 22, 1921, between the parties for his assistance in the sale of Camp Taylor. While the check was not drawn payable to Knight and does not bear his endorsement, the petitioner testified unqualifiedly as to what it was for.

We are convinced by the evidence that the amount in question was paid by the petitioner to Knight for services rendered in connection with the sale of Camp Taylor under the contract which was introduced in evidence, and represents an allowable deduction.

Counsel for the respective parties have referred in their briefs to our decision in *Earl S. Gwin*, 14 B. T. A. 393, wherein in deciding whether a portion of the $20,000 here involved was a gift by Knight to Gwin, we stated that the $20,000 was a gift to Knight. In that case we had before us the question of the taxability to Gwin of a portion of the $20,000 here involved which was paid over to him by Knight. In the *Gwin* case Knight was a witness and testified that the $20,000 was a gift to him from Clarke. In the instant case we have the written instrument signed by Knight under which the amount was paid in addition to having Clarke's testimony as to what the payment was for, and at a rehearing of this proceeding we have heard the testimony of Knight and further testimony from the petitioner, both of whom were subjected to cross-examination. From all the evidence we are convinced that the payment was for services rendered and was not a gift by the petitioner. While there is an irreconcilable conflict between the testimony and the decision in the. *Gwin* case and in this case, we must decide each case according to the testimony in that particular case.

The petitioner contends that the respondent erred in refusing to allow as a deduction for 1921 as additional sales expense an amount of $2,730 which he claims represents the cost of the lots near Burlington, Iowa, sold in that year. These lots, twelve in number, were

a part of the land purchased in 1920, subdivided and all sold in that year except them. The total cost of the land purchased, including the 12 lots, was $18,038, which was deducted in the petitioner's return for 1920. The petitioner contends that the respondent erred in allowing the total cost of the land in 1920, a year not before us, and that he should be allowed a deduction in 1921 of $2,730 as representing the cost of the 12 lots. We recognize the rule that where land is acquired in one tract, subdivided, and sold in different tracts, the purchase price of the entire tract may be allocated to the portions or subdivided tracts which are sold and gain or loss determined. *Thomas J. Avery*, 11 B. T. A. 958; *J. S. Cullinan*, 5 B. T. A. 996. In allocating the cost price to the subdivided portions there must be some reasonable fact basis on which to make an allocation. As no evidence was submitted on the basis of which an allocation of the cost could be made, the determination of the respondent is affirmed.

In his original petition the petitioner alleged that the respondent erred in disallowing as a deduction for 1921 an amount of $17,640 representing the cost of stock acquired prior to 1921 and which became worthless in 1921. In the amended petition the amount is shown as $18,290. The costs of the various stocks involved here have been determined on the basis of the evidence in the record and are set out in our findings of fact.

At the hearing the petitioner stated his contention as being that the transaction with Cassin " was not a real sale." He admits in his brief that the so-called sale of the stocks to Cassin was for the sole purpose of reducing income tax and that it was not an actual sale. He contends, however, that all of the stocks except one became worthless in 1921, and that he is entitled to deduct the loss on all of them except the one from his gross income for that year.

The petitioner, being unable to make a bona fide sale of the stocks, entered into the arrangement with Cassin as set out in our findings of fact, and on the basis of it reported in his 1921 return a loss sustained on the sale of the stocks. At the time he transferred the stocks to Cassin, who was in the petitioner's employ at $200 per month and who had no assets, he did not expect Cassin to pay anything for them and according to the petitioner's testimony he knew that Cassin would not give 5 per cent of the par value of the stocks or even 1 per cent of such value for them. The only purpose of the arrangement was for the petitioner to take a loss on them in his income tax return and thereby reduce the amount of his tax. Although the petitioner went through the form of selling these stocks to Cassin, he actually made no sale to him. Cassin paid nothing for them and was not to pay anything for them. They were and continued to remain the property of Clarke.

In his return for 1921 the petitioner took a deduction of $3,942.50 as a loss on the stock of the Flesher Petroleum Company. He has established by evidence a cost of $2,051.68 for this stock, which he admitted at the hearing was not worthless in 1921. This stock was included in the pretended sale to Cassin.

By the use of a transaction known to him to be fictitious the petitioner took as a deduction a loss which he claimed had been sustained by a sale of stock which was in fact not worthless, and which so far as the record shows was known not to be worthless. In our opinion the return for 1921 in which such a deduction was claimed was false and fraudulent and was made for the purpose of evading tax. The respondent's action in imposing the fraud penalty for 1921 is approved. *Lincoln L. McCandless*, 5 B. T. A. 1114.

In order to sustain the petitioner's contention that the remainder of the stocks became worthless in 1921 and that he is entitled to deduct the losses on them from his gross income for that year, it must be shown that the stocks became worthless in fact during that year and that there was no reasonable probability that any portion of the investment in them would ever be recovered. See *Lillie M. Clark*, 9 B. T. A. 460, and cases there cited.

The evidence with respect to the value in 1921 of the stock of the Lee-Allen Oil Company, Wyoming-Kentucky Petroleum Company, Co-Operative Land & Development Company, Paragon Oil Company, and the Favorite Oil Company is indefinite, ambiguous and uncertain. The conclusion we reach from it is that the stocks were as worthless in 1920 as in 1921 and have so found as a fact. Aside from the Lee-Allen Oil Company stock no evidence was submitted as to whether the companies were still in business in 1921, or as to the assets owned by them or their financial condition otherwise. From such evidence we are unable to find that the respondent was in error in disallowing the losses claimed in 1921 on these stocks.

Cost was not established by the evidence for the stock of the Archer Tire & Rubber Company and no evidence was offered as to the value of it. We therefore have no basis for allowing any loss on it.

No cost was established for the stock of the Burk-Brown Investment Company and from the evidence as to the value of this stock in 1921 we are unable to determine when it became worthless. Under the evidence therefore, no deductible loss is shown.

While the evidence shows that the stock of the Southern States Oil Company became greatly reduced in value in 1921 and that there was no ready market for it, we are unable to find that the stock actually became worthless in 1921. The petitioner's contention as to this stock is therefore denied.

The Kytex Oil Company was liquidated in 1921 and a distribution of one-half of 1 per cent of the par value per share was made to the stockholders. The petitioner is entitled to a deduction for a loss on this stock of the cost price of $1,150 less the amount received in liquidation.

In a schedule attached to his return for 1922 the petitioner listed 13 items, totaling $10,117.56, which he reported as "unidentified income" and explained as follows: "Unable to classify the following income due to insufficient information regarding deposits." He now contends that these amounts can be identified and that they do not represent income. The evidence shows that two items included in the above amount, one of $4,500 and another of $1,000, represented cash merely transferred from two banks. It was money already received and the transfer from one bank to another did not affect income. The amounts should, therefore, be omitted in determining the petitioner's taxable income.

The petitioner contends that he is entitled to deduct in 1922 the amount of $1,545.35 as expenses incurred by him in the sale in that year of the farm of E. R. Rowlett, his father-in-law. With respect to the repayment by Rowlett of the expenses the petitioner testified as follows:

Q. Do you know whether or not he ever paid these expenses?
A. I do not recall. I know he paid for the car. We gave a car away, and he paid for that, and I do not recall any other settlement.

\* \* \* \* \* \* \*

Q. Did you ever ask him for that money?
A. I do not recall. That has been five or six years ago, and I do not recall how that was paid. I do recall that he paid for a car given there, but I married Mr. Rowlett's only daughter, and he has been paying me for twenty years in different ways.
Q. You felt very friendly towards him?
A. Exceedingly so.

We are not convinced by the evidence that the petitioner has not received payment for the expenses incurred in the transaction. The burden is upon the petitioner to show that he has not been reimbursed. If he was reimbursed he is not entitled to the deduction claimed. The determination of the respondent on this issue is affirmed.

For 1922 the petitioner failed to report commissions amounting to $27,178.47 as set out in our findings of fact. He concedes that these items are taxable income, but does not accept the blame for these omissions from his return. He seeks to lay it all on his stenographer or others in his office.

The petitioner testified that he left the making of his returns and the keeping of his accounts entirely and wholly to the office force.

In contrast to this we have his testimony as to how he had thought of taking in his 1920 return the losses taken on stock in his 1921 return and how he devised and carried out the fictitious scheme resorted to in order to take losses in his 1921 return. With respect to the $20,000 paid to Knight, he testified that he told his office force not to put the amount in his return as advertising and which direction, according to his explanation, resulted in the amount being omitted from the return. His stenographer also testified as to instructions received from the petitioner as to including certain unidentified bank deposits in the return.

The petitioner also testified that he employed men of experience in tax matters to make out his returns and that he left their preparation to them with such assistance as might be gotten from the office force. Holmes, who was employed as a full-time bookkeeper, made out the 1922 return with the assistance of the petitioner's stenographer.

From a consideration of the evidence we do not accept the petitioner's claim that he had but little if anything to do with the preparation of the return or furnishing the data from which it was made. Neither do we think it likely that the petitioner could have filed an income tax return such as was filed for 1922, showing a net income of $8,017.40 when commissions of more than three times that amount had been omitted, without realizing that it was not a true return. The great discrepancy in the amount of income with respect to which it appears the petitioner had never entertained a doubt as to its taxability is one circumstance which, taken in connection with other evidence, prevents our attributing the errors to mistakes of judgment or oversight.

Aside from the above considerations there is a personal responsibility of a taxpayer in reporting his taxable gains and profits which he can not lightly avoid by leaving the preparation of his return to others. We think that the language of the Court in the case of *Duffin* v. *Lucas*, decided by the United States District Court for the Western District of Kentucky, September 12, 1929, unreported to date, in which the Court found that the return was fraudulent upon facts similar to those here presented, is applicable here. There the Court said:

But it does not help plaintiff to have it accepted that he had little, if anything to do with the preparation of the returns. If such was the case in signing and swearing to them he must have done so either with or without carefully advising himself as to their contents. It is not reasonable to suppose that he did so without advising himself and if he was fully advised as to their contents he must have known that they were wrong and that egregiously so. If as a matter of fact he thus did and allowed them to be given in there was such indifference on his part in regard to the matter as to indicate that he desired

to keep in the dark as to their contents. I am led to these conclusions by the fact that the returns were so far out of the way from what they should have been. * * *

From the facts before us we are of the opinion that the petitioner's return for 1922 was false and fraudulent and made with the intent of evading tax and that the respondent did not err in imposing the fraud penalty for that year.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*