ANGELO J. AMATO and JUDY AMATO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent ANGELO J. AMATO, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Amato v. Commissioner
Docket Nos. 5604-74, 5605-74
United States Tax Court
T.C. Memo 1977-305; 1977 Tax Ct. Memo LEXIS 136; 36 T.C.M. (CCH) 1202; T.C.M. (RIA) 770305; September 8, 1977, Filed; As Amended Sept. 9, 1977 Bruce E. Lambert, for petitioners. Joseph T. Chalhoub and Buckley D. Sowards, for respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined the following deficiencies and additions to tax under section 6653(b)[1] in petitioners' Federal income taxes for the taxable years specified: [2]
Additions to Year
Deficiency
Tax under Sec. 6653(b)
1961
$ 1,296.12
$ 648.06
1962
1,400.67
700.34
1963
1,831.93
915.97
1964
3,299.52
1,649.76
1965
737.98
368.99
1966
19,366.48
9,683.24
1967
7,276.97
3,638.48
*138 In the absence of adequate books and records, respondent reconstructed petitioners' income by the bank deposit method and by tracing various funds applied directly and indirectly for petitioners' benefit, and the deficiency notices were issued on this basis. Timely petitions were filed in both cases on July 5, 1974. Respondent filed timely answers which affirmatively alleged the grounds, and facts in support thereof, on which he relies to support his determination that petitioner Angelo J. Amato was liable for the additions to tax under section 6653(b) as required under Rule 36(b). [3] Petitioners did not file a timely reply as required by Rule 37, and respondent filed a motion for entry of an order that undenied allegations in the answer be deemed admitted under Rule 37(c). On December 11, 1974, a hearing was held on respondent's motion at which petitioners appeared solely by their counsel and were granted permission to file late replies. Respondent's motion to consolidate these cases for purposes of trial, filing of briefs and the promulgation of opinion by this Court was filed on March 29, 1976, and was granted without objection on May 24, 1976. *139 After unsuccessful attempts to resolve the dispute by settlement conferences, respondent served a request for admissions on petitioners' attorney on January 13, 1976. Respondent also forwarded to petitioners' attorney a proposed stipulation of facts on April 7, 1976. Petitioners made no effort to respond in any manner to either the request for admissions or the proposed stipulation of facts. On May 17, 1976 the case was called in Cleveland, Ohio where petitioners originally requested the trial be held, and petitioners failed to appear either personally or by their representative. The case was again called on May 24 and 25, 1976, but petitioners neither appeared nor sent a representative, nor was any effort made to explain petitioners' failure to appear. Respondent orally moved to dismiss for failure to prosecute as to the deficiencies, and moved for summary judgment on the fraud issue based on the pleadings and the request for admissions. This motion was submitted in writing on May 24, 1976. Finally, a hearing was held on respondent's motion at Washington, D.C., on September 15, 1976. At this time petitioners' attorney appeared and stated that petitioners had been virtually *140 inaccessible to counsel, the last contact having been made in early 1975. Counsel made several attempts to find petitioner Angelo Amato, including traveling to Cleveland to his home and office and talking to his former accountant. When informed by the government that petitioner was incarcerated, counsel wrote him at the Federal prison and received no response. Petitioners have failed to properly prosecute their cases, to comply with Rules 90 and 91, and to appear before this Court. There has been no offer to show that either petitioner made any effort to communicate with their counsel or otherwise prosecute this case. In fact, the record suggests that petitioners may have, through remaining deliberately inaccessible, impeded their attorney's efforts to proceed. Therefore we grant respondent's motion for dismissal as to the deficiencies for each year before the Court and enter judgment thereon for respondent under Rule 123(b). The sole remaining issue is petitioner's liability for additions to tax under section 6653(b), which is before us on respondent's motion for summary judgment under Rule 121. The following findings of fact are based on the pleadings and the matters *141 contained in respondent's request for admissions which are deemed admitted under Rule 90. [4]
Petitioners in docket number 5604-74 are Angelo J. Amato and Judy Amato (hereinafter referred to as petitioners), husband and wife, who resided at 26051 Columbus Road, Bedford Heights, Ohio, at the time their petition was filed, Petitioners filed joint Federal income tax returns for the taxable years 1961, 1962, 1964, and 1967 with the Internal Revenue Service office in Cleveland, Ohio. The following amounts of income were reported: Year
Amount
1961
$3,004.99
1962
2,423.16
1964
1,800.00
1967
4,275.00
Petitioner [5] in docket number 5605-74 is Angelo J. Amato who resided at 26051 Columbus Road, Bedford Heights, Ohio, at the time his petition was filed.Petitioner did not file Federal income tax returns for the years 1963, 1965, and 1966. Angelo J. Amato was born in 1938, graduated from high school and attended college where he took a business administration course. During all of the times here pertinent, *142 he was associated with his father, Angelo A. Amato, in the following businesses: (a) Amalina Cement Contractors, Inc.
(b) A & G Cement Contractors, Inc. (c) Aurora Trucking Company (d) Bassett Trucking Company 1961
On March 24, 1961, petitioner opened account number 018-702-6 at the Capital Bank, Cleveland, Ohio (hereinafter referred to as account no. 1), in the name of A. J. Amato, 16615 Throckley Road, Cleveland, Ohio. Petitioner and his father were authorized to sign checks in this account. From March 24 through June 30, 1961, while petitioner was unemployed, $2,205 was deposited in this account. A total of $11,049.23 was deposited in it during 1961. On August 29, 1961, petitioner opened an account with the Capital Bank, Cleveland, Ohio (hereinafter account no. 2) in the name of Angelo Amato, Jr., 9511 Sophia Avenue, Cleveland, Ohio. During 1961, Eric and Jesse Leaf, parents of Judy Amato, resided at that address. During that year $1,905 was deposited in account no. 2. Also during 1961, a $575 check from Charles R. Baverla was cashed at a restaurant by Angelo Amato. 1962
During 1962, $16,262 was deposited in account no. 1. Also during that *143 year, Amalina Cement Contractors, Inc., (hereinafter referred to as Amalina) issued checks to or for the benefit of petitioners amounting to $6,271.84. 1963
During 1963, $1,285 was deposited in account no. 1. Also during 1963, Amalina issued checks to or for the benefit of petitioners totaling $9,763.10. Petitioner opened account number 018-728-4 at the Capital Bank, Cleveland, (hereinafter referred to as account no. 3) during 1963 in the name of Joseph Amato, 23878 Banbury Circle, Cleveland, Ohio. A total of $950 was deposited in this account during that year. 1964
During 1964, $731.23 was deposited in account no. 3. On March 20, 1964, Amalina issued a $320 check to Angelo J. Amato. Also during that year, A & G Cement Contractors, Inc., (hereinafter referred to as A & G), issued checks totaling $15,112 to or for the benefit of petitioner. Petitioner maintained an account at the Twinsburg Bank, Twinsburg, Ohio (hereinafter referred to as account no. 4), in the name of Angelo Amato, 23878 Banbury Circle, Warrensville Heights, Ohio, during 1964. During that year $2,075 was deposited in account no. 4. 1965
On June 15, 1965, petitioner opened an *144 account at the Union Commerce Bank, Cleveland, Ohio (hereafter referred to as account no. 5), in the name of M. Amato, 25450 Cambridge Drive, Bedford Heights, Ohio, with an initial deposit of $50. A total of $4,623.73 was deposited in that account during 1965. Also during 1965, Aurora Trucking Co. (hereinafter referred to as Aurora), issued checks to or for the benefit of petitioners which totaled $3,518.54. The Mike Simonelli Trucking Co. (hereinafter referred to as Simonelli), paid petitioner gross wages during 1965 of $1,174.33, by checks, the net amount of which totaled $1,048.84. 1966
Petitioner was authorized to sign checks on Aurora's checking accounts at the Bank of Cleveland, the Union Commerce Bank, the Community National Bank at Warrensville Heights (hereinafter Community Bank), and the Central National Bank of Cleveland (hereinafter Central Bank). On July 5, 1966, Simonelli issued a $6,000 check to Aurora which was endorsed Aurora Trucking Company, Angelo Amato (agent). $2,500 was deposited to the Aurora account at the Bank of Cleveland. On July 21, 1966, Simonelli issued a $10,000 check to Aurora. Proceeds of this check were used to purchase an official *145 Union Commerce Bank check. Both of these checks were endorsed Aurora Trucking Company, Angelo Amato (agent). On July 21, 1966, deposits of $1,500 and $2,000 were made to Aurora's Bank of Cleveland account. On September 22, 1966, Simonelli issued a $2,500 check to Aurora. This check was endorsed the same as the two previous checks from Simonelli to Aurora had been. Two thousand two-hundred and fifty dollars of the proceeds of this check was used to purchase an official Union Commerce Bank check which was endorsed Aurora Trucking, Angelo Amato (agent), subendorsement Al Micatrotto. On June 20, 1966, S. B. Morabito Trucking Co. (hereinafter Morabito) issued a $2,659.97 check to Aurora. This check was endorsed identically to the Simonelli checks, and $200 was deposited in Aurora's Bank of Cleveland account. On June 24, 1966, Morabito issued checks totaling $3,722.37 to Aurora. These checks were used to purchase an official bank check of the Central National Bank in the amount of $3,722.37. This was endorsed just as the checks from Simonelli had been, and $1,444 was deposited into Aurora's Bank of Cleveland account. On September 14, 1966, Morabito issued a $1,898.26 check *146 to Aurora. This check, which was endorsed Aurora Trucking Company, Angelo Amato (vice President), was used to purchase an official check of Central Bank in the amount of $1,898.26. This check was made out to Aurora and endorsed Aurora Trucking Company, Angelo Amato, Jr. (president), subendorsement Al Micatrotto. On September 23, 1966, Morabito issued a $2,573.72 check to Aurora. This check, which was endorsed Aurora Trucking Company, Angelo Amato, was used to open an account in Aurora's name at the Central Bank with an initial deposit of $573.72. On December 6, 1966, Morabito issued a $1,502.56 check to Aurora. Petitioner used it to purchase an official check of the Central Bank payable to LaScala Supper Club in the amount of $1,500. On December 30, 1966, Morabito issued a $626.93 check to Aurora which was endorsed Aurora Trucking Company, Angelo Amato (owner), and cashed at the Central Bank. Also during 1966, Aurora issued seven checks, drawn on its Community Bank account, which were signed by petitioner and the proceeds of which went either to him or for his benefit. These checks totaled $8,076.75. In addition, Aurora issued 32 checks drawn on its Central National *147 Bank account which were signed by petitioner and the proceeds of which went either to him or for his benefit. These checks totaled $13,903.40. On June 22, 1966, Aurora issued two checks totaling $485, drawn on its Bank of Cleveland account. These checks were signed by A. J. Amato to Angelo Amato, and were negotiated by petitioner to Gold's Men's Shop. On June 10, 1966, Hudson Trucking Company (hereinafter Hudson) issued a $3,746.23 check to Aurora, $3,000 of which was deposited on that day in Aurora's Bank of Cleveland account. Hudson also issued a $500 check on December 20, 1966, which was endorsed by Aurora Trucking Company, Angelo Amato (agent) and cashed at the National City Bank. On December 24, 1966, Hudson issued a $2,000 check to Aurora which was endorsed in the same way as the December 20 check and subendorsed by A. Micatrotto. On June 28, 1966, C. F. Juh Engineering Co. (hereinafter Juh) issued a $301.25 check to Aurora. It was endorsed by Aurora Trucking Company, Angelo Amato, Jr., (agent), and two days later $151.21 was deposited in Aurora's Bank of Cleveland account. 1967
On January 12, 1967, Simonelli issued a $400 check to Aurora which was endorsed *148 Aurora Trucking, Angelo Amato (Pres.) and cashed at the Union Commerce Bank. On January 5 and 30, 1967, Hudson issued checks of $3,000 and $577.30, respectively, to Aurora which were cashed at the National City Bank and endorsed Aurora Trucking Company, Angelo Amato, Jr., (owner). Hudson also issued a $1,100 check to Aurora on March 23, 1967 which was cashed that day and endorsed Aurora Trucking, Angelo Amato, Jr.
On June 20, 1967, petitioner opened an account at the First National Bank of Akron, Akron, Ohio (hereinafter account no. 6), in the name of Angelo Amato, 5713 Eastwood, Maple Heights, Ohio, 44137. Petitioner listed as his employer, Buckeye Trucking Company. On June 26, 1967, Simonelli issued a $1,200 check to Bassett Trucking Company (hereinafter Bassett). This check was endorsed Bassett Trucking, Angelo Amato, and deposited in a checking account at the First National Bank of Akron in the name of Angelo Amato. On October 17 and 24, 1967, Simonelli issued checks of $2,000 each to Tony Coneglio, DBA Bassett Trucking. These checks were endorsed Tony Coneglio, DBA Bassett Trucking, and subendorsed by James T. Scolaro, and the cash received by petitioner. The *149 proceeds from 11 other checks issued by Simonelli to various payees were received by petitioner during 1967. The total amount of these checks was $18,400. Juh issued five checks to various persons in 1967 of which, $2,033.25 was received by petitioners. On August 24, 1967, the Twinsburg Banking Company issued a $1,950.90 check to Bassett, the proceeds of which were received by petitioner. The sole remaining issue is whether petitioner is liable for additions to tax for fraud under section 6653(b). Section 6653(b) imposes a 50 percent addition to tax for a year in which any part of the underpayment of tax is due to fraud. The existence of fraud is a question of fact which must be ascertained by an evaluation of all the facts of the case. Stone v. Commissioner,56 T.C. 213, 224 (1971); Stratton v. Commissioner,54 T.C. 255, 284 (1970). The burden is on the respondent to prove the existence of fraud by clear and convincing evidence. Section 7454(a); Rogers v. Commissioner,111 F. 2d 987, 989 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938); *150 Stratton v. Commissioner,supra, at 284. Respondent must prove that petitioner acted with the specific intention of evading a tax believed to be owing. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939). This intention may be inferred from circumstantial evidence such as proof of conduct calculated to mislead or conceal. Beaver v. Commissioner,55 T.C. 85, 92-93 (1970); Pigman v. Commissioner,31 T.C. 356, 370 (1958). It is not necessary for respondent to prove how much of the underpayment for a particular year was due to fraud since the addition to tax under section 6653(b) applies to every year for which any portion of an underpayment is due to fraud. Drybrough v. Commissioner,238 F.2d 735 (6th Cir. 1956), remanding 23 T.C. 1105 (1955); Smith v. Commissioner,32 T.C. 985 (1959). *151 Respondent seeks to carry his burden of proof primarily through admissions deemed admitted under Rule 90. Although the failure of petitioner to properly prosecute the case does not relieve respondent of his burden of proof, ( Miller-Pocahontas Coal Co. v. Commissioner,21 B.T.A. 1360 (1931)) we have frequently held that respondent may carry that burden of proof with evidence deemed admitted pursuant to Rule 90. See, e.g., Gilday v. Commissioner,62 T.C. 260 (1974); Strachan v. Commissioner,48 T.C. 335 (1967); Morris v. Commissioner,30 T.C. 928 (1958). [6]
After a careful evaluation of the record, we find that respondent has proven by clear and convincing evidence that petitioner, Angelo J. Amato, consistently and fraudulently underpaid taxes known to be owing for the years 1961 through 1967, inclusive. During part of this period, 1961-1965, while a total of only $7,228.21 *152 in taxable income was reported, over $38,800 was being deposited in petitioner's bank accounts. [7] No explanation for the source of these deposits has been suggested save that they represent currently taxable income. We have found that petitioner was associated with his father in various businesses during this period, and there is evidence of numerous specific payments made directly or indirectly to petitioner and his wife from several business sources during those years. Thus respondent has proven that the amount of money which petitioner deposited in his accounts from 1961 to 1965, inclusive, was several times the amount of income he reported for Federal income tax purposes, and that these deposits were made during a period when petitioner was actively engaged in several business enterprises and was receiving substantial checks from several persons. There is evidence that he received large amounts of income which he fraudulently failed to report. Cf. Goe v. Commissioner,198 F. 2d 851 (3d Cir. 1952), affg. a Memorandum Opinion of this Court, cert. denied 344 U.S. 897 (1952); Harper v. Commissioner,54 T.C. 1121 (1970). *153 The record is replete with specific instances in which petitioner received substantial amounts of compensation, directly or indirectly, which were never reported. Numerous checks were issued to petitioner and his wife by Amalina (a business in which petitioner was associated) for the years 1962, 1963, and 1964. A & G Cement, another business in which he was associated, issued checks to or for his benefit in 1964 totaling over $15,000. Simonelli paid him over $1,000 in wages during 1965. Aurora directly paid him and his wife over $3,500 in 1965, and approximately $22,000 in 1966. C. F. Juh Excavating Company paid him over $2,000 in 1967 apparently for equipment rental. Yet only a fraction of this income was ever reported. "Such evidence of deliberate omissions and understatements of * * * income is a clear showing of fraudulent intent on the part of petitioner." Smith v. Commissioner,32 T.C. 985, 987 (1959). In addition to such direct payments, there is substantial evidence that petitioner received for his own benefit funds intended as payment to businesses with *154 which he was associated. During 1966 and 1967 petitioner, who was authorized to sign checks for Aurora, received and endorsed checks payable to Aurora from Simonelli, Morabito, Hudson, and C. F. Juh Excavating Co. The full amount of these checks was seldom deposited in Aurora's banking accounts. Rather, the proceeds were usually either received by petitioner or converted to bank checks which petitioner later endorsed as agent for Aurora. One such bank check, originally purchased with funds from a check drawn by Morabito and payable to Aurora in early December 1966, was made payable to the LaScala Supper Club [8] in the amount of $1,500. During 1967, Simonelli issued 14 checks made payable to either the Bassett Trucking Co., or to "Tony Coneglio, DBA Bassett Trucking." The proceeds of these checks, totaling $23,600, were received by petitioner. Petitioner likewise received the proceeds from a $1,950.90 check issued in 1967 by the Twinsburg Banking Company to the Bassett Trucking Company. We express here no opinion as *155 to the legality of the receipt of such funds, since, regardless of the state law consequences, petitioner's receipt of these proceeds clearly constituted taxable income which petitioner fraudulently and consistently failed to report on a Federal income tax return. See Drybrough v. Commissioner,238 F.2d 735 (6th Cir. 1956), remanding 23 T.C. 1105 (1955). For three years, 1963, 1965, and 1966, petitioner failed to file income tax returns despite his receipt of $10,473.10, $7,118.09, and $48,217.47, respectively, in taxable income. While the mere failure to file a return may not alone be sufficient to establish fraud, Muste v. Commissioner,35 T.C. 913, 921 (1961), repeated failures in the context of the years before us remain "persuasive evidence of an intent to defraud the government." Stoltzfus v. United States,398 F. 2d 1002, 1005 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Powell v. Granquist,252 F.2d 56 (9th Cir. 1958); Beaver v. Commissioner, 55 T.C. 85, 93 (1970). *156 Certainly petitioner cannot claim ignorance of the filing requirements since he did file returns for the four other years involved herein, and he has presented no explanation for his failure to file during the other three years. For those years for which returns were filed, we have found that only a fraction of petitioner's actual taxable income was reported. Year
Reported Income
Actual Income
1961
$ 3,004.99
$ 9,509.69
1962
2,423.16
10,130.31
1964
1,800.00
18,657.49
1967
4,275.00
32,661.45
Total
$11,503.15
$70,958.94
Courts have frequently observed that such "consistent understatement of substantial amounts of income is persuasive evidence of fraud." Shaw v. Commissioner,27 T.C. 561, 573 (1956), affd. 252 F.2d 681, 683 (6th Cir. 1958).Accord: Adler v. Commissioner,422 F.2d 63, 66 (6th Cir. 1970), affg. a Memorandum Opinion of this Court; Shahadi v. Commissioner,266 F.2d 495, 501 (3d Cir. 1959), cert. denied 361 U.S. 874 (1959), affg. 29 T.C. 1157 (1958); *157 Powell v. Granquist,supra at 60; Harper v. Commissioner,54 T.C. 1121, 1139 (1970). These discrepancies between reported and actual income were clearly both "substantial" and "consistent." It is conceivable that taxpayers may make minor errors in their tax returns, or, owing to different or contradictory theories of tax computation, calculate returns which differ greatly in result from the Commissioner's assessments. Here petitioners do not have that excuse. Discrepancies of 100% and more between the real net income and the reported income for three successive years strongly evidence an intent to defraud the Government. The Board did not err in deciding that 50% penalties should be assessed. [Rogers v. Commissioner,111 F.2d 987, 989 (6th Cir. 1940), affg. 38 B.T.A. 16 (1938).] No explanation has been presented to justify these understatements or to mitigate the force of them as evidence of fraud. Petitioner objects to the finding of fraud on several grounds. First, the petitioner contends that to allow *158 the default judgment as to the amounts of tax liability to establish the existence of fraud would be improper since it would permit respondent to carry its heavy burden of proof on the fraud issue by petitioner's inability to carry his burden of proof as to the amount of deficiency. See Pigman v. Commissioner,31 T.C. 356, 370 (1958). However, we have not based our decision on the fraud issue upon petitioner's failure to disprove the amount of his liability. Rather, we have relied upon our findings that petitioners directly or indirectly received several specific payments during these years which greatly exceeded reported income. Additionally, petitioner's bank deposits exceeded reported income for years during which he was participating in several businesses, and he filed no returns for three years despite the receipt of large sums of money. When these many acts and omissions over this entire period are considered together, it is clear that petitioner engaged in a continuing course of conduct intended to conceal his receipt of income and evade the payment of Federal income taxes in each of the years before us. Finally, petitioner contends that his records were *159 turned over to a reputable accountant and filed pursuant to his findings with the assumption that income was properly disclosed. While reasonable reliance on professional advice as to the tax consequences of transactions is a relevant factor tending to negate a finding of fraudulent intent, it remains true that "there is a personal responsibility of a taxpayer in reporting his taxable gains and profits which he cannot lightly avoid by leaving the preparation of his return to others." Clarke v. Commissioner,22 B.T.A. 314, 328 (1931). Furthermore, we find it hard to understand how petitioner's reliance could be reasonable in light of the large amounts he received as compared with the small amounts reported. Clarke,supra, at 328-29. Petitioner has not explained how he reasonably believed he need not even file returns for three years during which he received approximately $7,000, $10,000, and $48,000. What we have said thus far refers only to petitioner, Angelo J. Amato. Judy Amato, Angelo's wife, is co-petitioner in docket number 6504-74 by virtue of having signed *160 a joint return with her spouse for the years 1961, 1962, 1964, and 1967. Although the respondent, in the notice of deficiency, concedes that the additions to tax under section 6653(b) are not applicable to her, since no part of the underpayments are due to fraud on her part, she remains jointly and severally liable with her husband for the basic deficiencies in tax for those years, under section 6013(d)(3). Stone v. Commissioner,56 T.C. 213 (1971). She has not alleged that she qualifies as an "innocent spouse" under section 6013(e) and there is no evidence in the record to indicate that she meets the requirements for relief under that section. Although the deficiency notices were sent to petitioners in 1974 for the years 1961 through 1967, inclusive, respondent is not barred by the three or six year statutes of limitation in section 6501(a) and (e). Since petitioner never filed a return for the years involved in docket number 5605-74, and since petitioners filed fraudulent *161 joint returns for the years involved in docket number 5604-74, the tax may be assessed at any time.Section 6501(c)(1) and (3). As to Judy Amato, although section 6653(b) does not impose the civil fraud penalty on her, neither does it create an exception of the tolling of the statute of limitations as to the basic deficiency provided by section 6501(c)(1). [Section 6653(b)] merely relieves her of the liability for the fraud penalty--the respondent's proof of fraud by [the guilty spouse] prevents the running of the statute of limitations so that [the innocent spouse] remains liable for the deficiencies for the years in issue. [Stone v. Commissioner,supra, at 228.] [9]
Appropriate orders and decisions will be entered. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended unless otherwise stated. ↩
2. Judy Amato is a party to docket number 5604-74 (involving 1961, 1962, 1964, and 1967) solely by virtue of having signed a joint return with petitioner Angelo J. Amato, and respondent has not asserted the section 6653(b)↩ fraud penalty against her. Docket no. 5605-74, involving the years 1963, 1965, and 1966 for which no returns were filed, involves only petitioner Angelo J. Amato.
3. All rule references are to the Tax Court Rules of Practice and Procedure, 60↩ T.C. 1069 (1973).
4. See Rule 90(c), and Freedson v. Commissioner,65 T.C. 333↩ (1975).
5. "Petitioner" will hereafter refer to Angelo J. Amato only.↩
6. See also Plumlee v. Commissioner,T.C. Memo. 1977-21; Costello v. Commissioner,T.C. Memo. 1976-399↩.
7. ↩ Year
Bank Deposits
Reported Income
1961
$12,954.23
$ 3,004.99
1962
16,262.00
2,423.16
1963
2,235.00
1964
2,806.23
1,800.06
1965
4,623.73
8. The LaScala Supper Club had also been the payee designated on checks made by Aurora for petitioners' benefit on several other occasions in 1965 and 1966.↩
9. S. Rept. No. 91-1537, 91st. Cong., 2d Sess (1970), 1971-1 C.B. 606↩, 608.