**F. W. DRYBROUGH, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**L. N. SIMPSON, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 12747, 12748.**

United States Court of Appeals
Sixth Circuit.

Dec. 3, 1956.

Donald V. Hunter, Washington, D. C., Miller & Chevalier, Washington, D. C., of counsel, for petitioners.

S. Dee Hanson, Washington, D. C., Charles K. Rice, Lee A. Jackson, Robert N. Anderson, Dept. of Justice, Washington, D. C., on the brief, for respondent.

Before SIMONS, Chief Judge, and MARTIN and STEWART, Circuit Judges.

STEWART, Circuit Judge.

These are petitions to review decisions of the Tax Court in consolidated proceedings. The facts are set out in detail in that court's findings and opinion. 1955, 23 T.C. 1105 (sub nom. United Mercantile Agencies, Inc.).

Stripped of details, the facts are appallingly simple. The petitioners owned or controlled all the stock of a corporation engaged in the business of conducting a collection and mercantile agency. The corporation and both petitioners kept their books and filed their tax returns on the cash basis. During the years 1942 through 1946 the petitioners systematically removed from the corporation's incoming mail basket checks payable to the corporation, cashed them and divided the proceeds. These secretly diverted funds, amounting to more than $200,000 over the five year period, were not reflected upon the corporation's records or tax returns and were not reported by the petitioners on their individual returns.

Since the appropriated checks represented either fees for collection services or final payments on purchased accounts, the costs of which had been recovered, they constituted income to the corporation and were subject to a ninety-five per cent excess profits tax. The petitioners took the checks in order to evade the payment of this corporate tax.

Their defalcations were brought to light by an internal revenue agent in 1946. The corporation and each of the petitioners were subsequently indicted in the United States District Court for the Western District of Kentucky and jointly charged with knowingly and willfully attempting to defeat the corporation's federal taxes for the years involved. Pleas of *nolo contendere* were entered, and all three defendants were fined. In addition, both of the petitioners were sentenced to prison. After their release from prison they restored to the corporation the full amount they had taken.

The Commissioner asserted deficiencies and civil fraud penalties of approximately $300,000 against the corporation for failure to report receipt of the diverted funds in its income and excess profits tax returns for the years in which the diversions occurred. The Commissioner further determined that the abstracted funds constituted taxable dividends to the petitioners, and accordingly asserted deficiencies and fraud penalties of more than $300,000 against them individually. The Tax Court upheld the Commissioner's determinations against the corporation, and no petition for re-

view of that decision has been filed by the corporation. The Tax Court also sustained the Commissioner's determinations of deficiencies and fraud penalties against the petitioners personally, deciding that the funds diverted were taxable as dividends to them (except to the extent that one of the petitioners received such funds attributable to stock belonging to his wife), and that at least part of the deficiencies was due to fraud with intent to evade tax.

On this review the petitioners attack the Tax Court's decisions upon several alternative grounds. They argue that in diverting the corporate funds they were acting merely as officers and agents of the corporation in furthering its criminal purpose of evading its taxes. But if the conclusion be reached that they were acting for their own benefit, they say that they were embezzlers and that the purloined checks were therefore not taxable to them. Commissioner v. Wilcox, 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752. In any event, they contend that funds which from the beginning were owed to the United States cannot be taxed both as income to the corporation and as dividends to them, particularly where, as here, the amounts were returned in full to the corporation, the deficiencies and penalties assessed against the corporation more than exhausted those funds, and the corporation was thereby rendered insolvent. As to the fraud penalties, the petitioners concede that they were guilty of fraud with respect to the corporation's returns, but maintain that there was no proof of fraud in their personal returns because there was no evidence that they knew they had personally received taxable income when they secretly abstracted checks payable to the corporation.

Before turning to these arguments, it is appropriate to observe that there is not before us in this case any issue as to the petitioners' criminal culpability. It is abundantly clear that the petitioners carried out a deliberate and calculated scheme to cheat their government out of substantial tax revenues at a time when honest taxpayers were called upon to pay levies of unprecedented magnitude; and many citizens were making far greater sacrifices in the waging of a world war. For their criminal conduct they have been punished by fines and imprisonment. Moreover, much more than the full amount abstracted has already been assessed in favor of the government by way of the deficiencies, penalties and interest determined against the corporation. The sole question here is the extent of the petitioners' individual civil liability for taxes and penalties, and the correct resolution of that question will not be promoted by the importation of punitive concepts. The decisions in criminal cases relied on by the respondent are consequently of little assistance in deciding the issue before us. See e. g., Davis v. United States, 6 Cir., 1955, 226 F.2d 331, certiorari denied 1956, 350 U.S. 965, 76 S.Ct. 432; Currier v. United States, 1 Cir., 1948, 166 F.2d 346; Jolly v. United States, 6 Cir., 1956, 229 F.2d 180, certiorari denied 1956, 351 U.S. 963, 76 S.Ct. 1024.

The petitioners contend that since their purpose in taking the corporation's checks was to evade the payment of the corporation's tax, as the Tax Court found, they were merely acting as agents in promoting the fraud of the corporation, owing at all times a duty to hold the funds subject to the demands and needs of the corporation, and that therefore they cannot be charged with the receipt of income. Cf. Lashells' Estate v. Commissioner, 6 Cir., 1953, 208 F.2d 430. This argument is completely specious. Whatever their initial motives may have been, it clearly appears that through the fraudulent transactions in which they were engaged the petitioners received money over which they had complete and unrestricted control, which they took and treated as their own, and for which they doubtless never would have been required to account had it not been for the discovery of their fraud.

Alternatively, the petitioners argue that the funds they received were embezzled by them and therefore did not con-

stitute taxable income under the rule of Commissioner v. Wilcox, 1946, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752. The petitioners point out that twenty per cent of the common stock of the corporation was owned by the wife of one of them, who did not even learn of the withdrawals until 1947 after their discovery by the internal revenue agent. They further argue that their actions constituted embezzlement under the law of the state where they took place. Reinicke v. Bailey, 1908, 112 S.W. 569, 33 Ky.Law Rep. 977.

How much vitality continues to reside in the Wilcox rule since the Supreme Court's decision in Rutkin v. United States, 1952, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833, is a question not easy to answer. Compare Kann v. Commissioner, 3 Cir., 1954, 210 F.2d 247, certiorari denied 1954, 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1109, with J. J. Dix, Inc. v. Commissioner, 2 Cir., 1955, 223 F.2d 436, certiorari denied 1955, 350 U.S. 894, 76 S.Ct. 150.[1] We are convinced in any event that whatever authority the Wilcox rule retains is too narrow to encompass the facts of the present case. The petitioners were not employees who embezzled from an unwitting employer, but officers, directors and stockholders in complete domination and control of their corporation. We think the Tax Court was clearly correct in concluding that the petitioners took the corporation's funds under a claim of right and with the implied consent of the corporation. North American Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; United States v. Lewis, 1951, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560; Rutkin v. United States, 1952, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833;

Healy v. Commissioner, 1953, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007.[2]

Yet, even though received by petitioners under a claim of right, the funds are taxable as dividends only to the extent that the corporation had earnings and profits for the years in which they were withdrawn. Section 115(a) Internal Revenue Code of 1939, 26 U.S.C.A. § 115(a); Commissioner v. Timkin, 6 Cir., 1944, 141 F.2d 625, 630; United States v. Lesoine, 9 Cir., 1953, 203 F.2d 123, 125; Charles G. Duffy, 1943, 2 T.C. 568, 569. The Tax Court held that in determining the earnings and profits available for dividends the corporation's tax liabilities could not be considered, because the corporation kept its books on the cash basis. We are not convinced that the corporation's accounting method requires such a conclusion.

Whether a corporation keeps its accounts and makes its returns on the cash or accrual basis is a question generally relevant only in determining its own income and deductions as a taxpayer. Section 41, Internal Revenue Code of 1939, 26 U.S.C.A. § 41; United States v. Anderson, 1926, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Spring City Foundry Co. v. Commissioner, 1934, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200; Ohmer Register Co. v. Commissioner, 6 Cir., 1932, 131 F.2d 682, 143 A.L.R. 1164. Moreover, when that is the determination to be made, the question of federal income taxes does not arise, whether the taxpayer is on the cash or accrual basis, because such taxes are generally not deductible.[3]

Here the question is obviously quite different. It has been recognized

1. See "Taxation of Misappropriated Property: The Decline and Incomplete Fall of Wilcox," 62 Yale L.J. 662 (1953).

2. Both the petitioners testified that they knew that a ninety-five per cent excess profits tax was payable on the funds extracted, and that they therefore thought they were stealing from "Uncle

Sam," but the fact is that no tax attributable to any check withdrawn was due at the time it was taken.

3. Although they are of course material for such purposes as excess profits and personal holding company taxes. See discussion below.

that when it becomes necessary to determine the amount of a corporation's earnings and profits in order to determine the character of distributions to a shareholder, the usual principles as to accruability do not apply. For example, in determining its own net income, taxes cannot be deducted by an accrual basis corporation if they are disputed or denied. Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (federal processing tax); Dixie Pine Products Co. v. Commissioner, 1944, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 420 (state gasoline tax). Yet, in determining the amount of such a corporation's earnings and profits, the Tax Court has not hestitated to recognize a different principle. Estate of Esther M. Stein, 1956, 25 T.C. 940, 965–967; Stern Brothers & Co., 1951, 16 T.C. 295, 322–323. In both those cases the court reduced the amount of earnings and profits by the amount of disputed federal income taxes in order to arrive at the corporation's true financial status.

In analogous situations courts have refused to distinguish between cash and accrual basis corporations where it would be unrealistic to do so. Thus a cash basis personal holding company can deduct accrued but unpaid federal income taxes from its personal holding company income although § 505(a) (1) Internal Revenue Code of 1939, 26 U.S.C.A. § 505 (a) (1) provides for deduction of "taxes paid or accrued during the taxable year." Birmingham v. Loetscher Co., 8 Cir., 1951, 188 F.2d 78; Aramo-Stiftung v. Commissioner, 2 Cir., 1949, 172 F.2d 896; Commissioner v. Clarion Oil Co., 1945, 148 F.2d 671, 80 U.S.App.D.C. 41, certiorari denied 1945, 325 U.S. 881, 65 S.Ct. 1575, 89 L.Ed. 1997; Wm. J. Lemp Brewing Company, 1952, 18 T.C. 586, 600. A similar result has been reached in applying the § 102 penalty surtax. Harry M. Stevens, Inc. v. Johnson, D.C.S.D.N. Y., 1953, 115 F.Supp. 310. Moreover for the purpose of asserting transferee liability, corporate insolvency in the year of the transfer has been established by deducting tax liability which was unknown at the time of the transfer and was not assessed until a later year. Vestal v. Commissioner, 1945, 80 U.S.App.D.C. 264, 152 F.2d 132, 134; Scott v. Commissioner, 8 Cir., 1941, 117 F.2d 36.

In M. H. Alworth Trust, 1942, 46 B.T. A. 1045 the question for decision was substantially the same as that presented here, although it arose in a quite different context. The conclusion of the Board of Tax Appeals was expressed in the following language:

"To permit the distribution of gross earnings and profits without making allowance for outstanding obligations would leave such obligations as a charge on capital regardless of the method by which the corporation keeps its books and reports its income for Federal income tax purposes, and any method of accounting which reflects an amount of earnings and profits as being available for distribution as dividends in excess of net earnings and profits actually existing must under general corporation law give way to realities and can not control. We think it follows that in determining gains or profits available for distribution as dividends, as the term 'dividend' is generally defined, accrued but unpaid taxes must be taken into account." 46 B.T.A. 1047.

This decision was reversed in Helvering v. Alworth Trust, 8 Cir., 1943, 136 F.2d 812, and the respondent here relies on that opinion. See also Paulina du- Pont Dean, 9 T.C. 256, 266–67 (1947). The practical issue presented to the Court of Appeals in the Alworth case, however, was whether corporate tax liability should reduce earnings and profits in 1937 or 1938. Here, by contrast, the practical issue is whether a corporation's earnings and profits can *ever* be effectively adjusted by taxes owed and subsequently paid, in order to prevent a distribution of capital from being taxed as ordinary income. In resolving that issue we are persuaded by the reasoning of the Board of Tax Appeals in the Alworth case.

Nothing in Healy v. Commissioner, 1953, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 implies a contrary result. There taxpayers who had received salaries from closely held corporations had been required in a later year as transferees to pay tax deficiencies assessed against their corporations because part of their salaries had been held to be unreasonable and therefore not deductible by the corporations. The Court held that their incomes were to be adjusted in the year of payment of transferee liability, not in the year the salaries were originally received. No question of earnings and profits was involved.[4]

■ In the present case the petitioners knew that the corporation was properly chargeable with a ninety-five per cent excess profits tax on the funds which they were diverting. They subsequently had to pay the money back to the corporation to enable it to meet its tax obligations. Both common sense and realism require the conclusion that the corporate taxes attributable to the diverted income should be excluded from the corporation's earnings and profits under the circumstances of this case. We conclude that the earnings and profits available for dividends in each taxable year in issue should be reduced by the deficiencies determined against the corporation for that year. We further conclude that the fraud penalties for which the corporation has been found liable should be deducted from earnings and profits for the respective years in which

the fraudulent returns were filed. Estate of Esther M. Stein, 1956, 25 T.C. 940, 966–967; see Dawkins v. Commissioner, 8 Cir., 1956, 238 F.2d 174. To the extent of earnings and profits thus determined the diverted funds will be taxed to petitioners as ordinary income in the years received. Withdrawals in excess of earnings and profits will be taxed as capital gains after the adjusted basis of petitioners' stock has been exhausted. Sections 115(a), 115(d) Internal Revenue Code of 1939.[5]

■ There remains only the question of the petitioners' fraud with respect to their individual returns. As to that we are convinced the Tax Court's findings are correct. By their own admission the petitioners knew that even if they had filed honest returns on behalf of the corporation they would have been subject to individual tax liability on at least five per cent of their withdrawals. Yet they did not report any of the diverted funds in their tax returns. Only part of a deficiency need be shown to be due to fraud with intent to evade tax in order to invoke a civil fraud penalty. Section 293(b) Internal Revenue Code of 1939, 26 U.S.C.A. § 293(b). The petitioners must therefore pay fraud penalties on the deficiencies which will be found due on remand to the Tax Court.

The decisions of the Tax Court are set aside and the cases are remanded for proceedings consistent with the views expressed in this opinion.

4. Similarly, in Bennett E. Meyers, 1953, 21 T.C. 331, 346 fictitious salaries were involved. In Eugene Vassallo, 1955, 23 T.C. 656, 662–663 the question of the corporation's earnings and profits was not discussed.

5. Whether and to what extent petitioners are entitled to deductions for the year 1951 when they paid the funds back to the corporation are questions not now

before us. See Healy v. Commissioner, 1953, 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007; Arrowsmith v. Commissioner, 1952, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6; Crellin's Estate v. Commissioner, 9 Cir., 1953, 203 F.2d 812. If no such deductions have been claimed, the statute of limitations would now seem to be a formidable impediment. See cases collected in Mertens Law of Federal Income Taxation, Section 58.39.