Trinidad National Bank v. Commissioner.
Trinidad Nat'l Bank v. Commissioner
Docket No. 93182. n1
United States Tax Court
T.C. Memo 1963-93; 1963 Tax Ct. Memo LEXIS 251; 22 T.C.M. (CCH) 444; T.C.M. (RIA) 63093; March 29, 1963
Laurence A. Ardell, Esq., 314 Bon Durant Bldg., Pueblo, Colo., for the petitioner. Jack Morton, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $16,383.38 for 1955, and one of $608.52 for 1956, in the income tax of the petitioner (sometimes called herein the Bank). The only issue for decision is whether the Commissioner erred in determining that the Bank "realized a long-term capital gain of $82,516.91 in 1955 the sale of property described as bank building instead of a nondeductible loss of $17,483.09 as shown on your income tax return." Findings of Fact The petitioner is a banking corporation organized in 1934 and doing business in Trinidad, Colorado. It filed its income tax return for 1955 with the *252 director of internal revenue for the District of Colorado. The outstanding stock of the Bank at all times material hereto was 1000 shares of $100 per share par value. Those shares had been owned for some time up to July 16, 1955, by Harold W. Cuckler and Royden Brown. Those owners, through their equal partnership, entered into a contract of sale of all of those shares to Walter Lacy on July 16, 1955. Certificates for the 1000 shares were issued in the names of Lacy and his nominees on July 18, 1955. The Bank at the time of that sale owned the premises on which it conducted its business. It carried that property as an asset on its books at a value of $33,000. The property had an unadjusted basis of $78,861.20 and an adjusted basis of $50,483.09 in the hands of the Bank. The minutes of a meeting of "stockholders" of the Bank held at 1:30 P.M. on July 18, 1955, in which the stock was voted by Cuckler, Brown and their nominees records a motion adopted to sell the Bank's building to Cuckler, Brown and Company for $33,000 to be paid in cash by the purchaser. The minutes of a board of directors' meeting at 2 P.M. on July 18, 1955, records the resignation of the old Cuckler and Brown *253 board members and officers and the election of a new Lacy board and officers. The Bank's title to the aforesaid property was deeded to Cuckler, Brown and Company on July 18, 1955, for a stated consideration of "One Dollar and other valuable consideration." It is stipulated herein that the fair market value of the property at that time was $133,000. It is stipulated herein that the consideration received by the Bank for the property was $33,000 the amount of a draft dated July 16, 1955, drawn by Lacy upon a bank in Oklahoma. The petitioner reported the sale on its income tax return for 1955 as follows: Gross
Depreciation
Cost or
Gain or
Sales Price
Allowed
Basis
Loss
$33,000.00
$28,378.11
$78,861.20
($17,483.09)
Cuckler, Brown and Company conveyed title to the property to Lacy on July 20, 1955. Cuckler, Brown and Company paid nothing to the Bank for the property and received nothing from Lacy for conveying title to the property to him. Lacy owed Cuckler and Brown a balance of $100,000 on the purchase price of $475,000 for the Bank stock from July 16 to about July 26, 1955, when he received $100,000 from a Denver bank on a loan on which Lacy pledged *254 the Trinidad Bank property as collateral with the lender, and paid the $100,000 to Cuckler and Brown. The Commissioner, in determining the deficiency against the Bank, held: It is determined that you realized a long-term capital gain of $82,516.91 in 1955 from the sale of property described as bank building instead of a nondeductible loss of $17,483.09 as shown in your income tax return. Accordingly, your taxable income is increased $82,516.91. The stipulation filed in this case is incorporated herein by this reference. Opinion This case, the case of Lacy and the Cuckler and Brown cases present some conflicting interests. The Commissioner has taken inconsistent positions in some of these cases in order to protect the revenues, and the witnesses Cuckler and Lacy have expressed different views as to what they did. The Court has tried to find the facts in accordance with the substance and reality of what was done without slavish adherence to the form of the contract and the transfers of title to the Bank premises. It is difficult to find support for the action of the Commissioner in this particular case regardless of what view is taken of the evidence. The Commissioner's reasoning *255 that the petitioner had a profit from the sale of its bank property is not clear or persuasive. He devotes little space in his brief to the subject. He cites section 311 of the Internal Revenue Code of 1954 and seems to argue that Cuckler and Brown, as stockholders of the petitioner-bank "intercepted or diverted to their own use $100,000.00 of the sale proceeds due the Bank," citing United Mercantile Agencies, Inc., 23 T.C. 1105 (1955), appealed and remanded on another issue, 238 F. 2d 735 sub nom. Drybrough v. Commissioner. He expressly states that he does not argue that the petitioner "made an anticipatory assignment of income," but does contend that the "petitioner did, in substance, sell its bank building property through the negotiations of its officers instead of distributing the bank building property to its shareholders who then sold it" and thus it realized a gain instead of a loss. These arguments are not, in the opinion of the Court, supported by the facts in the case. The most reasonable view would seem to be that the banking premises were not under any interpretation of the facts sold for more than the $33,000 consideration *256 received by the Bank. That amount was paid by Lacy to the Bank and not by Cuckler or Brown. Cuckler and Brown never paid anything for the property and held it only temporarily as a pledge of security for the balance owed them by Lacy for the stock. Cuckler, Brown and Company did not receive the property as a stockholder distribution from the Bank. Lacy eventually received the property when the whole deal between him and Cuckler and Brown was completed. Cuckler and Brown were not the equitable owners of the Bank stock on July 18, 1955, when the deed was executed. Lacy was then the equitable owner of the stock and stock certificates were issued to him and his nominees on that day. He did not pay the $33,000 to the Bank so that Cuckler, Brown and Company or Cuckler and Brown could become the real owners of the bank property. The inference is clear (and he did not even suggest the contrary) that Lacy never intended to allow title to rest in Cuckler, Brown and Company, except as security for them until he could complete his arrangements for the loan from the Denver bank, after which he would take title as the real owner and purchaser of the real estate from the Bank. The Commissioner *257 points to no Code provision or decided case under which the Bank could be charged with an amount realized in excess of $33,000 upon its disposition of this property. The question of whether Lacy received any taxable income is not for decision in this case. The Commissioner erred in the adjustment which he made with respect to the sale in question. Decision will be entered under Rule 50.