MARVIN O. ARENSTEIN, D.O., Ph.D., P.A., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Arenstein v. Commissioner
Docket Nos. 15828-90, 15829-90, 15830-90, 16019-90
United States Tax Court
T.C. Memo 1993-339; 1993 Tax Ct. Memo LEXIS 341; 66 T.C.M. (CCH) 282; August 2, 1993, Filed *341 Decision will be entered for respondent except with respect to the additions to tax for fraud against Roberta Arenstein. For petitioner in docket Nos. 15828-90, 15829-90, and 15830-90: Jerome S. Richman, Edward P. Guttenmacher, John Steven Bohatch, and Mitchell Stuart Fuerst. For petitioner in docket No. 16019-90: Jerald David August and Joseph J. Kulunas. For respondent: Ellen T. Friberg and Wayne A. S. Hamilton. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Docket No. 15828-90
Additions to Tax,
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
1983
$ 4,570
$ 2,285.00
[1]
1984
5,967
2,983.00
[1]
1985
6,589
3,294.50
[1]
Docket No. 15829-90
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1983
$ 11,519
$ 5,759
[1]
$ 2,880
1984
14,574
7,287
[1]
3,644
1985
12,733
6,366
[1]
3,183
Docket No. 15830-90
Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1986
$ 7,459
$ 373
[1]
$ 1,865
*342 Docket No. 16019-90
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)
Sec. 6653(b)(2)
Sec. 6661
1983
$ 11,519
$ 5,759
[1]
$ 2,880
1984
14,574
7,287
[1]
3,644
1985
12,733
6,366
[1]
3,183
All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by petitioners, the issues for decision are whether the deficiencies in and additions to tax on unreported income diverted from Marvin O. Arenstein, D.O., Ph.D., P.A. (the corporation), to petitioners reduce earnings and profits of the corporation; whether petitioners are liable for the additions to tax determined by respondent; and whether petitioner Roberta Arenstein (Ms. Arenstein) is entitled to innocent spouse relief under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners Marvin O. Arenstein (Dr. Arenstein) and Ms. Arenstein were residents of Florida at the time their respective petitions were *343 filed. The corporation had its principal place of business in Florida at the time its petition was filed. At all material times, Dr. Arenstein was a doctor of osteopathic medicine and the sole shareholder of the corporation. Dr. Arenstein and Ms. Arenstein were married for 26 years, including the years in issue. They separated on or about January 14, 1986, and were divorced on January 23, 1987. In 1980, Dr. Arenstein, Ms. Arenstein, and Ms. Arenstein's mother, Shirley Feuer (Feuer), met with Nancy Strelau (Strelau), a certified public accountant, and retained Strelau to set up an accounting system for the corporation's medical practice. The corporation maintained its books and records and filed its tax returns on a cash basis. Strelau instructed Dr. Arenstein, Ms. Arenstein, and Feuer on preparation of the cash receipts and disbursements journal and instructed them that the cash receipts and disbursements journal should reflect all of the fees received by the corporation and that all receipts should be deposited in the corporate bank account. Prior to and during the years in issue, fees received by the corporation were recorded on a daily fee sheet or "day sheet" maintained *344 at the corporate offices. The day sheet contained the patient's name, the amount of fees collected from the patient, and any amount received from insurance companies on the patient's accounts. The employees of the corporation collected the fees from patients and posted the information on the day sheets. Certain employees were instructed as to preparation of the day sheets by Ms. Arenstein, who sometimes worked in the corporate offices. At the end of each day, Dr. Arenstein brought home with him the day sheets and a pouch containing the cash and checks received during the day. Feuer verified the total on the day sheets against the cash and checks received and prepared a deposit slip for the checks and some portion of the cash. The cash that was not deposited was usually, but not always, given to Dr. Arenstein, who placed it in his wallet. Ms. Arenstein had regular access to Dr. Arenstein's wallet and to the undeposited cash. Ultimately, undeposited cash was used for family expenses, including a swimming pool at the family residence. After the amount of cash not to be deposited was determined, Feuer prepared a new patient day sheet to correspond with the total fees reflected *345 on the deposit slip. She then prepared the cash receipts and disbursements journal, which did not reflect the undeposited cash. Dr. Arenstein delivered the cash receipts and disbursements journal and the bank statements to Strelau for use in preparing the tax returns for the corporation. Strelau was unaware of the unreported cash. She prepared the corporate returns and petitioners' returns for the years in issue. The undeposited cash was not reported as income on the corporate returns or on the joint returns of Dr. and Ms. Arenstein. On the corporate tax returns, payments made to a daughter of the Arensteins for personal purposes were deducted as compensation. During 1984, Ms. Arenstein qualified for a real estate license. She began working as a real estate agent in September 1984 and continued for approximately 1 year. In 1985, she took another job, which lasted for almost a year. Because Dr. and Ms. Arenstein had only one automobile during 1984 and 1985, Ms. Arenstein drove Dr. Arenstein to work and picked him up after work. She also assisted at the medical office during these years. She was aware of the manner of recording fees and was aware of Dr. Arenstein's level *346 of income during the years in issue. In 1986, as a result of Dr. Arenstein's involvement with another woman, Dr. and Ms. Arenstein separated. During the ensuing divorce proceeding, each gave a deposition. During her deposition, Ms. Arenstein demonstrated knowledge of unreported corporate receipts and the manner in which cash was diverted from the corporation. As to use of the money, she testified: A. From there in the beginning there was money saved frequently. I found money that was saved quite a bit. I paid $ 10,000 right out for my pool, I paid full cash for my car, I paid about $ 40,000 for my house. What I am trying to say is about four years ago I began to notice when I went to my husband's wallet there wasn't $ 2,000 there any more. There was like $ 10, $ 20. That was it.
During his deposition testimony, Dr. Arenstein admitted diverting unreported receipts of the corporation and deducting payments to his daughter for personal purposes as compensation on the corporate tax returns. He admitted that he had lied to the Government to gain an advantage. The judge in the divorce case referred Dr. Arenstein's admissions to the Internal Revenue Service (IRS), which *347 conducted a criminal investigation. Ms. Arenstein cooperated with the IRS during the course of the investigation. As a result of the criminal investigation, Dr. Arenstein was indicted. On May 21, 1990, Dr. Arenstein pleaded guilty to willfully filing a false Federal income tax return for 1984, a violation described in section 7206(1). With respect to the corporation, respondent determined that gross receipts were understated by $ 25,153, $ 32,781, and $ 35,645 for the fiscal years ended October 31, 1983, October 31, 1984, and October 31, 1985, respectively. Respondent disallowed as expenses $ 4,160, $ 4,240, and $ 5,000 claimed for payments to the daughter of Dr. and Ms. Arenstein for those years. Respondent also determined that the corporation was liable for the additions to tax for fraud. Respondent also determined that Dr. and Ms. Arenstein had constructive dividends during the calendar years 1983, 1984, and 1985 in the amounts of the unreported medical receipts and disallowed salary deductions. Respondent determined that the underpayments of tax on the constructive dividends for those years were due to fraud. Respondent also determined that Dr. Arenstein received unreported *348 constructive dividends from the disallowance of $ 8,045 paid to his daughter in 1986 and determined that the underpayment from such disallowance was due to negligence. OPINION Our findings of fact omit many of the sordid details of the unhappy family life of the Arensteins during the years in issue and during subsequent years when they battled with each other over who would be liable for the taxes on the cash that was skimmed from Dr. Arenstein's medical practice. Respondent and Dr. Arenstein claim that Ms. Arenstein is equally responsible for the unreported income. Ms. Arenstein claims that, as a result of Dr. Arenstein's mistreatment of her during the years in issue, she was excluded from information concerning unreported income and that, as a result of her drug dependency during the years in issue, she did not know what was going on in her household as her husband and mother engaged in daily alteration of books and diversion of cash receipts. Moreover, she claims to be an innocent spouse within the meaning of section 6013(e). Respondent, of course, has the burden of proving fraud by clear and convincing evidence. Sec. 7454. Petitioners bear the burden of proof on all other *349 issues, including Ms. Arenstein's eligibility for relief under section 6013(e). Rule 142(a). Dr. Arenstein admitted that he had lied previously when it was to his advantage to do so. He was convicted of a crime involving dishonesty. He conceded during trial that he is pursuing this litigation because he wants to be sure that his former wife is held equally liable, not because he believes that he is not liable. His testimony about circumstances during the years in issue was contradicted by Ms. Arenstein, Feuer, Ms. Arenstein's sister, and the Arenstein children. Ms. Arenstein's testimony was inconsistent with her deposition in the divorce case, in which she indicated familiarity with the cash skimming operations. She contends, however, that her knowledge of what occurred arose subsequent to the years in issue. Her testimony, although supported by other family members, is improbable. We do not believe that she was unaware of the cash skimming and the consequential underreporting of income. Respondent has not, however, demonstrated that her testimony was false by contemporaneous indicia of her direct involvement in preparation of the fraudulent tax returns. Respondent's case *350 rests on the credibility of Dr. Arenstein's testimony. No error has been suggested in respondent's determinations with respect to the corporation, including the additions to tax for fraud, and they must be sustained. Dr. Arenstein does not deny wrongful conduct but questions the taxability of constructive dividends on a technical ground discussed below. It is unnecessary, therefore, to belabor the applicable authorities and indicia of fraud as to him. The additions to tax determined against him by respondent are sustained. The bias of petitioners and the family members giving contradictory evidence must be considered. See Anderson v. Bessemer City, 470 U.S. 564, 575 (1985); Henson v. Commissioner, 835 F.2d 850, 853 (11th Cir. 1988), affg. in part, revg. in part, and remanding T.C. Memo. 1986-303. Where the testimony here is directly conflicting, it is too unreliable for us to make affirmative findings of fact. Unreliable testimony does not satisfy a party's burden of proof. The evidence of fraud against Ms. Arenstein is less than clear and convincing because Dr. Arenstein's testimony *351 was untrustworthy, uncorroborated, and contradicted. The additions to tax for fraud, therefore, cannot be sustained against Ms. Arenstein. She has, however, failed to persuade us that she did not know of the unreported income or that it would be inequitable to hold her liable for tax on it. See sec. 6013(e)(1)(C) and (D). Constructive Dividends to Individual Petitioners
Respondent determined that the income diverted from the corporation was taxable to the individual petitioners as dividends. Dr. Arenstein contends that the diverted funds cannot be dividends because the earnings and profits of the corporation, after reduction for the taxes and additions to tax owing on the unreported income, are insufficient to support dividend payments. Dr. Arenstein relies on Demmon v. United States, 321 F.2d 203 (7th Cir. 1963); Drybrough v. Commissioner, 238 F.2d 735 (6th Cir. 1956), remanding United Mercantile Agencies, Inc. v. Commissioner, 23 T.C. 1105 (1955); Hadden v. Commissioner, 49 F.2d 709 (2d Cir. 1931), revg. 17 B.T.A. 956 (1929). *352 Dr. Arenstein criticizes the rationale of contrary authority, to wit, Helvering v. Alworth Trust, 136 F.2d 812 (8th Cir. 1943), revg. 46 B.T.A. 1045 (1942), and Webb v. Commissioner, 67 T.C. 1008 (1977). In Webb v. Commissioner, supra, the conflict among the circuits was acknowledged, but this Court's position was described as follows: In M. H. Alworth Trust [v. Commissioner], 46 B.T.A. 1045 (1942), we held that a cash method taxpayer could reduce its earnings and profits by accruable taxes, but subsequent to the Eighth Circuit's reversal of our opinion in that case, we have consistently followed the reversal and have not allowed cash method taxpayers to reduce their earnings and profits on account of accrued but unpaid taxes. Paulina DuPont Dean [v. Commissioner], 9 T.C. 256, 266-267 (1947), affd. on other grounds 187 F.2d 1019 (3d Cir. 1951); United Mercantile Agencies, Inc. [v. Commissioner], 23 T.C. 1105, 1114-1115 (1955); Joseph B. Ferguson [v. Commissioner], 47 T.C. 11, 31-34 (1966). *353 Ferguson arose when there were already the contrary holdings by the three Circuit Courts of Appeals, and in the light of such holdings, we carefully reexamined our position and decided to adhere to it. All accrued but unpaid expenses represent a realistic and economic cost to a cash method corporation, but no reason has been advanced in any of the cases for treating accrued taxes differently from other accrued but unpaid expenses. [16] The decisions that have treated taxes differently are not persuasive because they were either decided under a statutory and regulatory scheme different from that now in existence, or their rationale was based upon certain fallacies. Hadden v. Commissioner, [49 F.2d 709 (2d Cir. 1931), revg. 17 B.T.A. 956 (1929)]supra, was decided under section 31 of the Revenue Act of 1916, as added by section 1211 of the Revenue Act of 1917, which defined a taxable dividend as a distribution made by a corporation out of "earnings or profits accrued" since March 1, 1913. (Emphasis supplied.) Thus, the statute itself seemed to place all taxpayers, regardless of their accounting method, on an accrual *354 method for purposes of calculating their earnings and profits. Furthermore, the court, in that case, cited regulations of the Commissioner which provided that "In ascertaining whether or not a distribution was made out of earnings or profits of the taxable year there should first be set aside a proper reserve for the payment of accrued income and war profits and excess profits taxes." Art. 1542, Regs. 45. However, in section 201(a) of the Revenue Act of 1918, the successor of section 31 of the Revenue Act of 1916, the word "accrued" was changed to "accumulated," the term used in section 316. In addition, in 1941, the Commissioner amended section 19.115-3 of Regs. 103, the predecessor of section 1.312-6(a), Income Tax Regs., to provide explicitly that in computing earnings and profits a corporate taxpayer was to follow the method of accounting employed in computing its taxable income. Consequently, there is no longer any statutory or regulatory basis for the conclusion in Hadden. Nor is the opinion in Drybrough [v. Commissioner, 238 F.2d 735 (6th Cir. 1956), remanding United Mercantile Agencies, Inc. v. Commissioner, 23 T.C. 1105 (1955)] *355 persuasive for a number of reasons. First of all, the court never cited or discussed the relevant regulations, even though the Supreme Court has stated that they are entitled to great weight. See, e.g., Bingler v. Johnson, 394 U.S. 741, 749-750 (1969); Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501 (1948). Indeed, in direct conflict with the rule of the regulations, the Sixth Circuit stated: Whether a corporation keeps its accounts and makes its returns on the cash or accrual basis is a question generally relevant only in determining its own income and deductions as a taxpayer. * * * [238 F.2d at 738.]
In addition, Drybrough involved a situation wherein officer-shareholders had diverted to themselves, over a number of years, more than $ 200,000 of the corporation's gross income, on which it would have been subject to a 95-percent excess profits tax. The corporation ultimately paid the taxes on such amount and the court held that the diversions constituted taxable dividends to the extent of the earnings and profits of the corporation. The court reasoned that if earnings *356 and profits were not reduced by the amount of the accrued taxes, the shareholders would be taxed at ordinary rates for what the court considered to be a distribution of capital. However, the belief that the amounts distributed represented capital was precisely the question to be decided, and the court's conclusion assumes that there must necessarily exist a correlation between general corporate law concepts of capital and earned surplus and the Federal tax concepts of capital and earnings and profits, an assumption which is not correct. Such an assumption was expressly rejected by the Supreme Court in Commissioner v. Wheeler, 324 U.S. 542, 546 (1945), when it said: It was no doubt permissible and perhaps the correct accounting, for determining earned surplus for dividends and such corporate purposes, for the corporation to set up its books on the market value of its property at the time of acquisition * * *. But "earnings and profits" in the tax sense, although it does not correspond exactly to taxable income, does not necessarily follow corporate accounting concepts either. * * * [Fn. ref. omitted.]
See also Joseph B. Ferguson, 47 T.C. at 32. *357 Furthermore, in Drybrough the court did not hold, as a general rule, that a cash method taxpayer could subtract accrued taxes from its earnings and profits; rather, it concluded merely that "Both common sense and realism require the conclusion that the corporate taxes attributable to the diverted income should be excluded from the corporation's earnings and profits under the circumstances of this case." 238 F.2d at 740. Finally, Drybrough offers no adequate explanation for its singling out of taxes for such treatment, while not doing so for other accrued but unpaid expenses. The opinion of the Seventh Circuit in Demmon v. United States [321 F.2d 203 (7th Cir. 1963)] relies primarily on Drybrough; consequently, the same objections are applicable to it. For these reasons, we remain convinced of the soundness of the view adopted by this Court in Paulina DuPont Dean, supra, United Mercantile Agencies, Inc., supra, and Joseph B. Ferguson, supra. *358 The above language states the position of this Court. See Manning v. Commissioner, T.C. Memo. 1993-127; Mazzocchi Bus Co. v. Commissioner, T.C. Memo. 1993-43. The only argument made by Dr. Arenstein and not addressed in Webb v. Commissioner, supra, is that the Court in Webb erroneously relied on section 1.312-6(a), Income Tax Regs., which Dr. Arenstein describes as "an interpretative regulation" that "arguably restricts and modifies IRC section 312(a) and 312(c)." Even interpretative regulations, however, are entitled to deference. United States v. Correll, 389 U.S. 299, 307 (1967). Section 312(a), (b), and (c) provides as follows: (a) General Rule. -- Except as otherwise provided in this section, on the distribution of property by a corporation with respect to its stock, the earnings and profits of the corporation (to the extent thereof) shall be decreased by the sum of -- (1) the amount of money, (2) the principal amount of the obligations of such corporation (or, in the case of obligations, having original issue discount, the aggregate *359 issue price of such obligations), and (3) the adjusted basis of the other property,
so distributed. (b) Distributions of Appreciated Property. -- On the distribution by a corporation, with respect to stock, of any property the fair market value of which exceeds the adjusted basis thereof -- (1) the earnings and profits of the corporation shall be increased by the amount of such excess, and (2) subsection (a)(3) shall be applied by substituting "fair market value" for "adjusted basis".
For purposes of this subsection and subsection (a), the adjusted basis of any property is its adjusted basis as determined for purposes of computing earnings and profits. (c) Adjustments for Liabilities. -- In making the adjustments to the earnings and profits of a corporation under subsection (a) or (b), proper adjustment shall be made for -- (1) the amount of any liability to which the property distributed is subject, and (2) the amount of any liability of the corporation assumed by a shareholder in connection with the distribution.
Dr. Arenstein argues that "the statute mandates adjustments to earnings and profits for distributions of property to shareholders, which *360 are subject to any liability. Unreported corporate receipts are obviously subject to tax liability and fraud additions in the year earned." It is apparent to us, however, that section 312(c), in conjunction with section 312(a) and (b), refers to adjustments for liabilities to which property other than money is subject, not to general liabilities, i.e., debts, of the corporation. Petitioners have not explained any way in which the regulation is inconsistent with the statute or otherwise invalid. Dr. Arenstein also asserts that neither Webb v. Commissioner, 67 T.C. 1008 (1977), nor Helvering v. Alworth Trust, 136 F.2d 812 (8th Cir. 1943), revg. 46 B.T.A. 1045 (1942), "[deals] with a corporate skimming operation" and therefore both "must be limited to their facts." Dr. Arenstein seeks relief while asserting: There is uncontroverted evidence that corporate receipts were diverted from MARVIN O. ARENSTEIN, D.O., PH.D., P.A.'s on a daily basis from the inception of the medical practice business until January 1, 1986. There is also evidence that all of the corporate receipts diverted from MARVIN *361 O. ARENSTEIN, D.O., PH.D., were used strictly for the personal benefit of MARVIN O. ARENSTEIN, ROBERTA ARENSTEIN, and their family.
We see no reason why this factual difference should support a rule favoring Dr. Arenstein's position. It indeed would be anomalous if a rule of tax law favored a taxpayer who skimmed cash from his corporation and filed fraudulent returns for the corporation and for himself. See Mazzocchi Bus Co. v. Commissioner, supra.
Dr. Arenstein also argues that the earnings and profits are a matter to be determined in the Rule 155 computation. He contends that the evidence of earnings and profits consists of the beginning balance shown on the 1982 tax return, because admitted skimming in prior years equaled unreported income in prior years as well as in the years before the Court. He argues that the assumed taxes and additions to tax that were owed on the unreported income would reduce earnings and profits, without regard to whether or not those obligations were ever acknowledged or paid. He has disputed certain of them in these cases. Liabilities that are contested or uncertain are not accruable. See, e.g., Dixie Pine Products Co. v. Commissioner, 320 U.S. 516 (1944). *362 In any event, we can give no credence to Dr. Arenstein's assertions that anything on the 1982 corporate return, including the reported earnings and profits, is correct in view of the evidence that returns filed by the corporation and by petitioners were false. There is no evidence from which the total amount of earnings and profits can reliably be determined, although the earnings and profits of each year in issue obviously include the unreported cash income skimmed by Dr. Arenstein from the corporation. Petitioners have not met their burden of proving that the amounts of constructive dividends determined by respondent are incorrect. See Truesdell v. Commissioner, 89 T.C. 1280, 1295-1296 (1987). Decisions will be entered for respondent except with respect to the additions to tax for fraud against Roberta Arenstein. Footnotes
1. Cases of the following petitioners are consolidated herewith: Marvin O. Arenstein, docket No. 15829-90; Marvin O. Arenstein, docket No. 15830-90; and Roberta Arenstein, docket No. 16019-90.↩
1. 50 percent of the interest due on the entire deficiency.↩
1. 50 percent of the interest due on the entire deficiency.↩
1. 50 percent of the interest due on the entire deficiency.↩
1. 50 percent of the interest due on the entire deficiency.↩
16. The use of the cash method of accounting has certain advantages and disadvantages in computing earnings and profits. Under such method, accrued but unpaid taxes will not reduce earnings and profits; however, accrued but unreceived income will not increase earnings and profits. [67 T.C. at 1019-1021↩.]